## SUPREME COURT.

### ROBINSON agt. WEEKS.

A cause of action arising upon a tort for the taking or conversion of personal property which survives the party and goes to the executors or administrators, is assignable.

Such an assignment carries with it the assignor's title to the property converted and vests it in the assignee.

But the assignee can not maintain an action for the tort in his own name until after he has demanded the property.

The unlawful taking or conversion of personal property, gives the wrong doer no title. The title remains in the original owner or his assigns until judgment and satisfaction for the tort. (*The case of Gardner vs. Adams,* 12 *Wend.* 297 *examined, and so far as it asserts a contrary doctrine overruled.*)

A cause of action arising from a tort merely personal, as assault and battery, slander, and the like, is not assignable. Such causes of action die with the person, and no one has such a property or interest in them as forms the subject of sale or transfer, until after judgment.

Where the plaintiff in an action of tort, the cause of which is assignable, and while the action is pending, assigns the same, and judgment is subsequently obtained, and the defendant, without notice of the assignment, pays to the sheriff the amount of such judgment, upon executions in his hands against the nominal plaintiff under § 393 of the Code, such payment will not operate to discharge the judgment thus obtained, as against the assignee.

A defendant who volunteers to discharge other's debts, which he is under no obligation to pay, must see to it that he pays the debts of the person who is really his creditor, or he will not be protected. He pays at his own risk, of being right, where the payment is not directly upon his own debt.

*Seventh District General Term, Sept.* 1851. *Present,* WELLES, SELDEN and JOHNSON, *Justices.* The case is sufficiently stated in the opinion of the court.

WM. IRVINE, *for Plaintiff.*

GEO. T. SPENCER, *for Defendant.*

By the Court, JOHNSON, Justice.—This is an appeal from an order made at special term, denying the motion to set aside the execution issued in the above entitled cause.

The action was for the conversion of a certain amount of money in bank bills; and after the trial, but before the judgment was perfected, the plaintiff sold and assigned the judgment he

Robinson agt. Weeks.

might recover to his attorney in the action, as the affidavits show bona fide, and for a good and valuable consideration.

The judgment was perfected on the 10th of August 1849, and on the next day the defendant, without any notice of the assignment, paid the amount to the sheriff of Steuben county on two executions then in his hands for collection, in favor of Daniel G. Smith against the nominal plaintiff.

The defendant's counsel insists that the plaintiff's attorney by the assignment to him acquired no title to the judgment for two reasons. First, that the cause of action was tort, and not assignable; and, second, that at the date of the assignment there was no judgment in existence; and the assignment gave no title to the judgment perfected afterwards.

To sustain the first ground, Gardner vs. Adams (12 *Wend.* 297) and The People vs. Tioga Com. Pleas (19 *Wend.* 73), are relied upon.

In Gardner vs. Adams, the court only held that a tort was not assignable so as to warrant an action in the name of the assignee, as the court expressly declare in The People vs. Tioga C. Pleas; and in the latter case it was held that a tort *merely* personal was not assignable, so that a court of law would protect the assignee against the subsequent fraudulent discharge of the judgment by the assignor. I confess I have never been able to see how the case of Gardner vs. Adams, upon the point relied upon, could be sustained upon principle, even if the court intended to go no farther than Cowen, Justice, says it did in The People vs. Tioga Com. Pleas.

For the purpose of deciding that point the court assumed the mortgage to be valid and free from objection, and Gardner to be a trespasser in causing the property to be levied upon and buying it in at the constable's sale. This being so, he acquired no title whatever to the property as against the mortgagee and his assigns. Nothing is better settled than that a trespasser acquires no title to the property he has unlawfully converted.

Even after action the title does not vest in the trespasser until after recovery of the damages and satisfaction. The property

Robinson agt. Weeks.

was levied upon in July, before the mortgage became due. The mortgage was assigned to Adams the 12th of August, two days after it became due, and the title to the mortgaged property had vested absolutely in the mortgagee. Prior to the assignment to Adams, Hard, the mortgagee, might at his election, either have brought an action against Gardner for the tort, or retaken his property.

He did not elect to bring his action but assigned the mortgage, which operated to transfer the title to the property to Adams, the assignee. Adams brought his action in March following, and the case shows that before suit he demanded the property of Gardner. Assuming the mortgage, therefore, to have been valid, there was nothing that I can perceive in the way of Adams maintaining an action in his *own* name. He had the title and the right of possession, and had demanded the property. The case on that point must have been decided upon the old English doctrine that a tortious taking of property changed the title, which has never been countenanced here. If nothing was assigned to Adams but the mere right of action for the tort, by the assignment of the mortgage, he must have brought his action in the name of Hard if he could have maintained it at all. But Hard had elected not to resort to his right of action, but to insist upon his title and sell it; and his assignee demanded the property and brought his action for the conversion in refusing to deliver it on his demand. It was not the case of the assignment of a tort, but of the sale and transfer of the title to personal property which another had tortiously taken.

I agree that Adams could not have maintained the action in his own name without a demand and refusal after he acquired his title; because until then, as to his right, there had been no unlawful interfence with it (Hall vs. Robinson, 2 *Comst.* 296.) The case upon this point is without principle or authority to support it and should be overruled. HOYT, Justice, in Hall vs. Robinson, in commenting upon this case says, if the demand by Adams was after the assignment, as the case I think clearly shows, " the decision can not be upheld either upon principle or authority.

Robinson agt. Weeks.

But in regard to the general doctrine of the assignment of torts. The case of The People vs. Tioga C. P. does not deny, but seems rather to concede that a tort for the taking or conversion of personal property may be assigned; and the case of North vs. Turner (9 *Serg. & Rawle*, 244), is cited with approbation, which expressly holds that such a claim may be assigned. It is a right which passes to an executor or administrator, and I think there can be no doubt that it may lawfully be assigned so as to vest the assignee with all the rights the assignor had at the time of the commission of the tort. The whole difficulty in regard to it seems to have arisen from not distinguishing between such cases and *mere* personal torts, as assault and battery, slander and the like, which die with the person, and which all the authorities agree can not be assigned.

It will be seen on a moment's reflection, that the two cases or rights of action, although both coming under the general classification of torts, have really little resemblance to each other. In the latter case there is nothing to assign but a mere injury, which does not survive the decease of the injured party, and in which no person can be regarded as having any property. While in the former the right and title to property of which the assignor is still undivested, goes with the assignment and vests in the assignee, or in the executor or administrator, on the death of the party against whom the tort was committed. I take it an assignment of the cause of action would necessarily carry with it the assignor's title to the property, because by prosecuting the action to judgment and obtaining satisfaction, the title becomes vested in the wrong doer and the purchaser must be regarded as acquiring the whole right by the assignment and authority to prosecute. The assignment of a bond merely carries with it by operation of law the mortgage, and draws after it the land (Jackson vs. Blodgett, 5 *Cowen*, 202; Green vs. Hart, 1 *John.* 590; Martin vs. Mowlin, 2 *Barr*, 978).

In the case of the death of a party whose property has been tortiously taken and who has not elected to bring his action in his life time, the title vests in the executor or administrator by

Robinson agt. Weeks.

operation of law, and he may bring his action for the original tort, or proceed and retake the property, as he may elect.

This view of the case answers the defendant's second objection to the assignment, that there was no judgment when the assignment was executed.

The assignment carried the whole title to the subject matter of the action, and of course to the judgment, when perfected. As between the parties to the assignment, clearly the whole right passed to the assignee, and the defendant the moment the judgment was perfected, became the debtor of the assignee and not of the nominal plaintiff. Nor was any notice to the defendant necessary except for the purpose of protecting the assignee against the acts of his assignor.

The defendant's counsel also contends that the payment to the sheriff on the two executions in his hands in favor of Smith against the plaintiff to the amount of this judgment, operates as a satisfaction and discharge of the same, even conceding the validity of the assignment, in as much as the defendant had no notice of the assignment, and the code authorizes such payments to be made by any debtor of judgment debtors.

The Code, § 393, provides that " after the issuing of execution against property, any person indebted to the judgment debtor may pay to the sheriff the amount of his debt, or so much thereof as shall be necessary to satisfy the execution, and the sheriff's receipt shall be a sufficient discharge for the amount so paid."

The difficulty in the way of the defendant is that at the time of making these payments to the sheriff he was not in fact indebted to the judgment debtor, whose debts he volunteered to pay.

The nominal plaintiff here had at that time no debt or demand against the defendant, which he could enforce at law or equity. It will hardly answer, I think, to say that as he had received no notice of the assignment he had a right to regard himself as the debtor of the plaintiff, and is therefore to be protected. The Code, it is true, authorizes a debtor of the judgment debtor to pay the amount of his debt upon any execution against the latter in the sheriff's hands; but it does not make it his duty to do so.

It imposes no obligation upon him whatever; and if a party indebted, instead of paying his debt to the person to whom he supposes himself indebted, and where he might learn the true state of the matter, chooses to go and pay another debt, which the law does not require him to pay, and to a person who has no opportunity of knowing whether or not he is really the debtor of the person whose debt he undertakes thus to satisfy, I think he does it at his peril. He must see to it that he pays *his creditor's* debt or the law will not protect him. He should be regarded as a volunteer, taking the risk of paying the right debt. Had the defendant paid to the nominal plaintiff the amount of the judgment and taken his discharge, without notice of the assignment, he would, without doubt, have been protected. Such payment and discharge would have been good against the assignee omitting to give notice of his rights. But the assignee in that case would have had his remedy against such nominal plaintiff by an action for a breach of the implied conditions of the assignment. Here, however, the party assigning has done nothing in violation of the assignment. The opposing affidavits show that the payments were made upon the executions against him without his knowledge or approbation and against his wish. The assignee, therefore, can not allege that the plaintiff has done any thing in violation of the express or implied conditions of the assignment, and consequently has no remedy upon the agreement. The assignor impliedly agrees in every assignment where it is not embodied in express terms, that he will not collect or discharge the judgment himself, nor interpose any obstacle to its collection by his assignee. But it would be going quite too far to hold that he impliedly undertakes to pay all demands that do then or may thereafter exist, against him before judgment and execution, and thus prevent all other persons from satisfying the judgment under this extraordinary provision of the Code. If these payments to the sheriff were to operate to discharge the judgment as against the assignee, this anomalous result would be produced. The assignee not only has judgment satisfied and discharged without any equivalent, but is deprived of all remedy against his assignor, while a third person,

a total stranger to both the *real* plaintiff and the defendant in the judgment, who had no right or claim to it in law, or equity, or ethics, succeeds in collecting it and retaining the money without being liable to any one. It is clear that Smith, by no proceedings at law or equity, could have obtained the amount of this judgment against the assignee. A general assignment to a receiver under the order of the court, or the bankrupt or insolvent laws by the nominal plaintiff, would have given such receiver or assignee no title to the judgment as against the assignee, even without any notice whatever (Muir vs. Schenck, 3 *Hill*, 228). Smith had no equities as against the assignee. His executions were no lien upon the claim when assigned, and the assignee was not bound to take notice of them or inquire after them. This was held by WILLARD, Justice, in Countryman vs Boyce (3 *How. Pr. R.* 386), as I think, correctly.

The assignee of judgments and choses in action, will be protected against executions in the hands of the sheriff.

The Code has not gone quite so far as to make judgments and executions issued thereon liens upon choses in action, or a notice equivalent to a *lis pendens*. The defendant has not paid the debt of the right judgment debtor, in this case, and the judgment still remains unsatisfied against him.

The order of the special term must, therefore, be affirmed.