Swan, Bowen, and Scott, JJ.,
concurred.
After this court had announced their opinion upon the rights of Grant & Stone and the merits of the case, it was suggested by the counsel of the Lafayette Bank that some of the defendants to the original bill, and who had been made parties to the bill of review, were not served with process, the same having been returned, as to some of them, not found. Leave was then given to the complainants to the bill of review to have process issued against the defendants not found, and to also amend and file a supplemental bill in this court for the" purpose of bringing into court the defendants and their legal representatives.
The complainant Grant, by way of supplement and amendment, stated as follows:
1. On December 31, 1853, the charter of the Lafayette Bank expired, and Charles Carlisle and others named, became trustees by assignment, and accepted the trust. These trustees are made parties defendant to the bill of review.
*26 2. Since filing the bill of review, George P. Torrence, Lewis Beach, and Jacob Baum, defendants, died; John E. Torrence has been appointed administrator of George P. Torrence, deceased, and Sophia Beach, administrator of Lewis Beach, deceased, and Charles Hartshorne, administrator of Jacob Baum, deceased. These administrators are made parties defendants.
3. On the 2d April, 1845, the interest of the defendants Robert McMillan and James Reynolds, defendants in the original cause, having an interest by judgment against Charles S. Clarkson and James C. Ludlow for $449, recovered in January, 1841, had assigned the same to Salmon P. Chase, who is made pai'ty defendant.
4. On the 1st August, 1845, the interest of James Boyd and William Boyd, defendants in the original cause, (being a judgment against said Clarkson for $16,000, recovered in April, 1841,) was assigned to the defendant John Burgoyne, as administrator of James C. Ludlow, deceased.
5. That George W. Jones, by paying a judgment as surety for Charles S. Clarkson, in favor of the Ohio Life Insurance and Trust Company, against said Clarkson and others, has acquired an interest in this litigation.
6. That certain defendants to the original bill who were judgment creditors of said Ludlow and Clarkson, have been paid and their judgments satisfied. These defendants are not made parties to the bill of review.
Other assignments of judgment creditors who were defendants to the oi’iginal bill, are set forth in the supplemental bill, and their assignees made parties defendants to the bill of review.
Upon the filing this supplemental bill, process issued against the defendants therein named, and was served. A rule was taken upon them to plead, answer or demur.
The trustees of the Lafayette Bank, for plea say, that this cause was reserved to this court after the charter of the bank had expired, and the trustees had been appointed, *27 and that by reason thereof this court have no jurisdiction over the cause or parties.
John E. Torrence, administrator of George P. Torrence, deceased, for plea says, that Clarkson was not served with process in this case within five years from the rendition of the original decree, and that no means were taken to bring Clarkson into court until within the last few months.
Salmon P. Chase has not answered. His assignors, original parties to the bill of review, have been served with process.
"William L. Boyd, survivor of James Boyd, former partners as James Boyd & Co., answers the bill of review, setting forth the judgment of the firm against Clarkson; that they assigned it to John Burgoyne, administrator of James C. Ludlow, deceased, without recourse, and disclaim therefore, all interest. And in relation to the same judgment, John Burgoyne answers and dezzies the jurisdiction of the court to bring him before the court, or to make any decz’ee against hizn; that he was not a paz’ty to the original bill in his own right; that he took an assignmexzt of said judgment in his own name, but that he has no interest in the judgment, other than as a mere depositary of the assignment thereof, or as a naked trustee for the bezzefit of the heirs of James C. Ludlow, deceased; and as administrator, he has zzo interest or control over the judgment. He zzames the heiz’s of Ludlow who own the judgment, and insists that they shall be made parties defendazzts to the bill of review.
George W. Jozzes, for plea says, that this court hath no jurisdiction, by vix’tue of the bill or supplemental bill, to make aziy decree against him; that he was not a party to the original bill, or hound by it; that more than five year’s have elapsed since the oziginal decree; that in January, 1840, the Ohio Life Insurance and Trust Company z’ecovez’ed a judgment against Clarkson, as principal, and respondent and Ludlow as sureties, for $1840, due on a promissory note made by Claz’kson and indorsed by *28 respondent and Ludlow as sureties, the ultimate payment of which note was secured by Clarkson to Ludlow by the mortgage set forth in the original bill in this cause; that the respondent paid said judgment to the Ohio Life Insurance and Trust Company; that after the rendition of said original decree, now sought to be reviewed, and after the cause under that decree was remanded by the Supreme Court to the court of common pleas, respondent filed his answer below in this cause, setting up his claim under said mortgage, and asserting his right of subrogation to the rights of the estate of said Ludlow. He afterward amended his answer and made it a cross bill as against Clarkson, who answered that on his cross bill he obtained a decree of subrogation to the rights of Ludlow, in the court of common pleas; an appeal was perfected by Clarkson and Samuel Grant to the district court, where, the case is now pending and undetermined.
Haines, Todd, ¡j¡¡ Lytle, and N. H. Swayne, for the Lafayette Bank and Hartshorne.
Ball £ Skinner, for Ludlow’s adm’r, Jones and Clarkson.
C. B. Wolcott, also for Ludlow’s adm’r.
John L. Miner and James Clark, for Grant.
J. R. Swan, J.
8. One of the questions made in this case is whether — • when it is ascertained, upon bill of review reserved to this court from the district court, that, either by mistake or by the decease of parties, some of the parties in interest are not before the court, or not served with process in the court below — this court can issue process and bring such parties before them, when necessary for the purpose of determining the subject matter of the action appealed or reserved. This question necessarily involves an inquiry into the incidental powers of an appellate court.
*29 No civil action can originate in the Supreme Court, or district courts of this state. Their jurisdiction is appellate.
The power of an appellate court to issue process for the appearance of parties before it, in cases coming within its jurisdiction, is not doubted. The power of this court and of the district court, is commensurate with their jurisdiction, by the express provisions of the statute. Swan’s Rev. Stat. 260, 261.
The powers incident to the appellate jurisdiction of a court, in bringing parties before it, permitting the pleadings to be there altered, and making new and necessary parties, must depend upon the mode in which, under the laws, the appellate jurisdiction is required to be exercised. In many states, and, perhaps, in all except Ohio, an appeal is in the nature of a writ of error, whereby the appellate court revises the rulings and final judgment of the court below, confining its adjudications to errors appearing upon the record of the court below.
Such also is the appeal to the supreme court of the United States, which is only allowed in equity and admiralty cases, and in which, by express provision of law, no new evidence can be heard, except in admiralty cases. Act March 3, 1803, chap. 98.
The best guide, perhaps the only safe guide, to determine what is the proper practice of appellate courts, is to be found in the appellate powers conferred*by law, and the usages of courts under it.
Under the constitution of 1802, the Supreme Court of Ohio could be vested with original and appellate jurisdiction. The statute, however, confined its original jurisdiction, in chancery and at law, to cases in which the matter in dispute exceeded one thousand dollars; and appellate jurisdiction to civil eases in which the court of common pleas had original jurisdiction. Swan’s Stat. of 1840, 222, sec. 2.
The Supreme Court, under this appellate jurisdiction, on appeals from the common pleas, permitted *30 further testimony to be taken, bills in chancery, and other pleadings, upon which the suit was tried in the common pleas, to be amended; and new parties to be brought into the appellate court, if such parties were necessary to decide the subject matter of the original suit.
An appeal to the supreme court did not simply present to that court the question whether the court below erred in law or in fact, but the appeal itself vacated, without revisal, the operation of all the law decided by the court below, and all the findings of fact, by the court or jury below.
One of the peculiar features of this appellate jurisdiction was, that, unlike a writ of error, which passes upon the record, and unlike an appeal to the supreme court of the United States, the appeal to the Supreme Court of Ohio took up the subject matter of the action at the point whore the court below took it up, and proceeded from that point, in respect to pleadings, necessary parties in chancery, testimony, trial and judgment, in like manner as if the cause had never been tried below.
In the case of Massie v. Matthews's Ex’rs, 12 Ohio Rep. 352, a bill of review was filed in the court of common pleas to review a decree of that court. On the bill of review, the court of common pleas reversed the original decree. The case in review was appealed to the Supreme Court, and while pending there, the complainants were permitted to file in the Supreme Court an amendment to the bill of review, in the nature of a bill, to impeach the original decree of the court of common pleas for fraud.
Such were the incidents of appellate jurisdiction, known and practiced for more than two generations, when the constitution of 1851 was adopted. By the provisions of this constitution, the Supreme Court and district courts have such appellate jurisdiction as may be provided by law. 'What was meant by appellate jurisdiction, had been too well settled by legislation and practice, to need definition or interpretation. Civil actions were not to originate *31 in the Supreme Court, or district courts; but when pending or decided in another tribunal, could be taken to and disposed of, in the appellate court, in such manner, and with such control over the pleadings, testimony, and necessary parties, as might be provided by law.
The system of appeals under the constitution of 1802, and the laws enacted thereunder, have been adopted under the constitution of 1851. Swan’s Rev. Stat. 717.
In cases appealed from the common pleas to the district court, the latter court is authorized, by law, to permit either or both parties to alter their pleadings. Swan’s Rev. Stat. 718, see. 11. Under this provision, and the peculiar provisions of the code, it will be frequently necessary to make new parties; and we perceive no reason why the district court should have less power, in this respect, than the Supreme Court under the constitution of 1802 exercised, as an incident of their appellate jurisdiction; and we are not inclined to hold this law unconstitutional and void, as we must do, if the jurisdiction of an appellate court is limited, as contended by counsel in this case. -
Applying this view of appellate jurisdiction to the case now before us, what are the incidents of the reservation of a case from the district court to this court ? If this were a reservation of a point in the case, the cause itself would still remain in the court below; and such is the law and practice of the supreme court of the United States. But, in the case before us, and in accordance with the uniform practice of the courts of this state, the cause itself has been reserved to this court. It no longer remains in the court below. "We have obtained the same jurisdiction over the subject-matter of the action as the district court had. Like a cause appealed into the district court from the court of common pleas, we take up the ease at the point where it stood when reserved; and, as in cases of appeal, have the same control over the subject-matter of the action, the pleadings, and, if necessary, the issuing and service of process, and the final determination of the case, *32 as the district court could have exercised, had that court retained it for final adjudication.
But there is, undoubtedly, a limit to the power of the appellate court, in permitting pleadings to be altered and new parties to be made, arising out of the nature of original and appellate jurisdiction. An appellate court acts upon a suit already commenced and pending. It cannot originate an action. And hence the amendment of pleadings, in the appellate court, cannot be permitted, so as to substitute for the cause of action originally brought, a new and different cause of action for the determination of the appellate court. But it not unfrequently happens, especially in equity cases; that facts and allegations necessary to determine the subject-matter of the original cause of action, and dependent upon and growing out of the original cause of action, have been omitted in the pleadings below, or the cause of action is imperfectly stated. Such amendments have been heretofore allowed on appeals, in this state; and when the collateral facts, in equity suits, made it necessary to bring a new party before the court, it has been allowed. Such amendments are made for the purpose of settling and fully determining the cause of action appealed.
But the question in the case now before us, could probably have been met by a much more brief statement. The district court, in issuing process to the defendants in review, were in the exercise of their appellate jurisdiction; and this court, after the cause was removed here, were, in issuing process against the defendants, exercising the. like appellate jurisdiction. A bill of review, stating the devolution of the interest of the parties to the original decree upon third persons, and making such third persons parties to the bill of review, is sanctioned by the usages of equity practice, and in no way contravenes the settled practice, that, upon bill of review, the court will look into the case as presented by the original files and .record. Upon the reversal of the decree, the bill of review, in respect to such *33 interests and new parties, may be retained as a supplemental bill. Heirs of Ludlow v. Kidd’s Heirs, 2 Ohio Rep. 382.
The question in regard to making new parties defendants, and serving those who were defendants to the original bill, was before this court, in the case of Robinson et al. v. Fife et al., reported in 3 Ohio St. Rep. 551. The case had been reserved from Clinton county. It was found, on hearing, that there was an omission of proper parties defendants to the original bill, and that some of the defendants to the original bill had not been served with process. This court, at their December term, 1853, on motion of counsel for complainants, gave leave to amend the bill, by making new parties defendants; and permitted the complainants to bring them, and the defendants to the original bill not served with process, into court, by publication. Order Book Sup. Court 165.
In determining this question, we simply adhere to the long-settled practice of the courts of this state, when exercising appellate jurisdiction.
4. Are voluntary assignees of parties to the original decree, necessary parties to a bill of review, under the circumstances disclosed by the proceedings in this case ?
To understand the relation of the defendants George P. Torrence, lewis Beach, Jacob Baum, Robert McMillen, James Reynolds, James Boyd, 'William Boyd, and Andrew Parris to the original bill and decree sought to be reviewed, it is necessary to refer to the original bill and decree. The original bill below, after naming these and other persons, alleged that they claim, or pretend to claim, some interest in said mortgaged premises, the precise nature of which was unknown to the complainants. The defendants were served with process, but did not appear, or by plea, answer or otherwise, disclose any interest whatever in the subject-matter of the litigation. They permitted the parties interested in the mortgages made by Clarkson to
ludlow, and to Grant & Stone, to litigate the rights under *34 these two mortgages, and the court to adjudicate upon them, without making known what claim they had, or pretended to have, in the mortgaged premises. They permitted a decree to pass by default against them. Anil now it is claimed that, inasmuch as these defendants had, in fact, judgments against Clarkson, and some of these judgments have been assigned, that Grant & Stone, upon a bill of review to revise the decision of the court below, shall ascertain what claims these defendants in fact had, or pretended to have, and also trace these claims into the hands of voluntary assignees, and make such assignees parties to the bill of review. Now we are of the opinion that, under such circumstances, and in respect to mere dioses in action, it is enough for the complainants to make the assignees parties defendants, upon alleging such assignments, or to make the assignors parties, without noticing the assignments. The former was not necessary; and the latter is sufficient.
William L. Boyd, survivor of James Boyd & Co., then being a defendant and before the court, it was not necessary to make John Burgoyne, the assignee of the judgment of Boyd & Co., or those who claim under the assignment to John Burgoyne, parties to the bill of review. So, Salmon P. Chase, assignee of the defendants McMillen and Reynolds, for the same reason, is not a necessary party.
As to process not having been issued against Clarkson within five years, the files in this case show that Clarkson, by an arrangement between his counsel in this ease, and the counsel of the complainant in review, must be deemed in court before the five years expired.
5. It is insisted that Grant & Stone cannot enforce the indemnity mortgage made by Clarkson to Lawrence until a judgment is rendered against Lawrence, fixing the amount of his liability for neglect, in regard to the securities taken by him from Clarkson.
If the mortgage of Clarkson to Lawrence had not been assigned to Grant & Stone, it is clear that Lawrence could *35 not enforce tlie indemnity mortgage against Clarkson until judgment bad been rendered against Lawrence in favor of Grant & Stone.
Clarkson, in tbe absence of such assignment, would have-had tbe right to insist, not merely that Lawrence bad not in fact been guilty of negligence in taking or parting with securities, but also that tbe amount of tbe damages of Grant & Stone, sustained thereby, should be fixed by judgment, and if you please, paid by Lawrence.
But was such judgment at law necessary in this case, after tbe assignment of the mortgage to Grant & Stone?
This court find that, at tbe time of this assignment, Lawrence bad been guilty of gross neglect, in taking and parting with securities, and was amenable to Grant & Stone for tbe balance of tbe advances, commissions, interest, and incidental expenses, growing out of tbe adventure mentioned in tbe pleadings. Under these circumstances, Grant & Stone bad not only a right of action against Lawrence, but, if Lawrence and Clarkson were insolvent, Grant & Stone could have been subrogated to tbe rights of Lawrence against Clarkson, and so enforced tbe mortgage lien of Lawrence upon Clarkson’s property, and thus collected tbe amount of their claim from Clarkson. Tbe parties, standing in this relation to each other, met, and Clarkson and Grant & Stone settled and determined tbe amount of tbe balance existing between them; and at tbe same time Lawrence, with tbe knowledge and by tbe consent of Clarkson, transferred to Grant & Stone tbe indemnity mortgage of Clarkson. Tbe consideration, as between Grant & Stone and Lawrence, for this assignment was on one band that Grant & Stone should be subrogated to tbe rights of Lawrence, under tbe mortgage, and on tbe other, that Lawrence should not be chargeable, personally, to Grant & Stone, for bis neglect in taking and parting with securities.
That Lawrence would not have transferred to Grant & Stone tbe mortgage made by Clarkson to him and still *36 hold himself liable to the action of Grant & Stone for the very thing which that mortgage was given to indemnify him against, is too clear to admit of doubt. If, therefore, after this assignment by Lawrence to Grant & Stone, the latter had brought an action at law against the former for neglect in taking and parting with securities, Lawrence could have pleaded in bar of such action, that, in consideration of the assignment of the mortgage, Grant & Stone had agreed to look to that mortgage alone for indemnity in the premises.
Grant & Stone, however, instead of bringing such an action at law against Lawrence, have proceeded in chancery against Clarkson, as assignee of Lawrence, for the purpose of being subrogated to the rights of Lawrence, under the mortgage; and now, notwithstanding this assignment was made by the consent of Clarkson, Grant & Stone are told that they cannot proceed in chancery until they do what they never can do, bring an action and recover a judgment against Lawrence for neglect in taking and parting with securities. We are of the opinion that a court of chancery will not permit Clarkson or any one else to thus discharge Lawrence, and defeat the assignment, the mortgage, and the intention of the parties, by cutting off all remedy, both at law and in chancery. A court of chancery never so trifles with the intention and rights of parties. It is, indeed, because Grant & Stone cannot fix the amount of the liability of Lawrence by an action at law, and because this was done by the consent of Clarkson, a court of chancery will take cognizance of the rights of Grant & Stone against Lawrence and against Clarkson, and give Grant & Stone the remedy which was contemplated by the assignment, and by all the parties to the transaction. The case of Hayden v. Smith, 12 Metc. 511, and referred to in Mr. Justice Brinkerhoff’s opinion, was, in some respects, similar to this. In that case a surety to a note took a mortgage from the principal, conditioned to save the surety “from any trouble, cost, or *37 expense, by reason of signing said note.” The surety afterward assigned the mortgage to the payee of the note “in consideration of the payee agreeing to release bim from all liability other than the use of his name in the collection of the note.” The court held, as we hold in this case, that the object of the transfer of the mortgage was that the payee of the note should receive from the surety a transfer of the mortgage, and thereafter rely solely upon that, and make no claim on the surety. It was insisted in that case, as it is insisted in this, that, while the payee supposed he was substituting the security of the mortgage for the personal security of the surety, he had, in fact, discharged both, inasmuch as the surety had not and never could be put to any trouble or expense, and so the mortgage never could become absolute. The court, looking to the intent and object of the transaction, held that the mortgage was not discharged, and that the payee was entitled to hold the land, as against the assignee of the equity of redemption, until the latter paid the note.
6. It is insisted that Grant & Stone’s claim on Lawrence was in the nature of a tort; not transmissible to executors or administrators, and died with the person.
By the statute in force when this transaction took place, all rights of action other than for libel, slander, malicious prosecution, assault, or assault and battery, and for nuisance, survived, and were transmissible upon the decease of either party. Swan’s Stat., old ed., 666, 667.
Whatever choses in action are transmissible by operation of law, are assignable in equity. The rule stated by Story, J., in Comegys et al. v. Vasse, 1 Pet. U. S. Rep. 213, is undoubtedly correct, and has been acted upon in the state of New York in determining what assignees may sue as plaintiffs under their code: “In general it may be affirmed that mere personal torts, which die with the party, and do not survive to his personal representatives, are not capable of passing by assignment; and that vested rights, ad rem and in re, possibilities coupled with an interest,
*38 and claims growing out of, and adhering to property, may pass by assignment.” Robinson v. Weeks, 6 How. Pr. Rep. 161; Hall v. Robinson, 2 Comst. Rep. 294; Hoyt v. Thompson, 1 Seld. Rep. 347.
7. George ~W. Jones was not a party to the original bill or bill of review. He has been brought in by supplemental bill. Jones claims that he has a right to be subrogated as surety of Clai’kson, to so much of the interest of Ludlow in the mortgage made by Clarkson to Ludlow as will indemnify him for the payment, made by him, as co-surety with Ludlow, on a note of Clarkson named in the mortgage made by Clarkson to Ludlow. The question whether Jones is entitled to such subrogation is pending in the district court of Hamilton county, and undetermined'. He insists that his rights shall not be adjudicated upon in the present case. Jones has undoubtedly a right to waive the assertion of this right; to wait until the rights of Ludlow ai*e settled and deteimined; and to leave Ludlow’s representatives, (in whom the right to foreclose and collect the mortgage exists, whether Jones has a right of subrogation or not,) to work out the operation, extent, and limits of the mortgage, which cannot be affected by the subordinate rights of Jones. He may assert his rights against the administrator of Ludlow at any time before the fund derived from the mortgage has been distributed among the creditors of Ludlow. So, too, the rights of Jones were or were not affected by the original decree. If they were not affected, he is not a necessary party here; if they were affected, and settled by the original decree, he has been made a party defendant to the bill of review more than five years after the rendition of the original decree. On the whole, we are of the opinion that Jones is not a proper party in this case; and as to him the bill must be dismissed, with like effect upon his rights as if he had not been made a party hereto, or filed a plea.
8. Lawrence is not a necessary party to this or the original bill. The mortgage operates whether it is held *39 by Lawrence or by Grant & Stone; so that Clarkson alone, and not Ludlow, is the proper person to contest the fact whether the assignment was made. The assignment by Lawrence to Grant & Stone is not disputed. It was absolute and unconditional, leaving no equitable interest whatever in Lawrence, and there is no remaining personal liability, at law or in equity, against Lawrence, to be affected by the decree. Story’s Eq. PL, sec. 153. It is clear that in such case a mortgagee need not be made a party. This question was made and settled by this court in the case of McGuffey v. Finley et al., 20 Ohio Rep. 474, in which the court wei’e constrained, and, as it seems, rather reluctantly, to yield to the array of authorities overruling the old practice.
Bbutkerhoit and Scott, JJ., concurred.