May Term,
**1859.**

PATTERSON
v.
CRAWFORD.

| 12 | 241 |
| 141 | 276 |

PATTERSON *v.* CRAWFORD.*

Section 216, ch. 40, R. S. 1843, declaring that any pleading denying or requiring proof of the execution or assignment of any instrument of writing which is the foundation of the suit, and is specially set forth in the declaration, shall not impose the necessity of such proof, unless verified by oath, is continued in force by § 802, 2 R. S. p. 224.

*A.* was convicted and sentenced to the state prison by a Court of Common Pleas, for an offense of which that Court had not jurisdiction. He was confined at hard labor from *June,* 1853, till *November,* 1854, when he was released on a *habeas corpus.* He assigned his account for the work and labor done during that time for the lessee of the prison, to *B.,* who brought suit against the lessee, joining *A.* as a party defendant, to recover the amount of the account. *Held,* that the assignment was good, and *B.* could recover, in his own name, against the lessee, as upon an implied contract, for work and labor done with his knowledge and at his request, although *A.,* while a prisoner, was under the control of the warden of the prison.

An assignee takes precisely the same interest in the assignment of any species of demand, either at law or in equity, that he would have taken before the enactment of the new code. Thus, a demand assignable before the code, so as to vest the real interest in the assignee, will pass by assignment under the code, so as to give the assignee a right of action.

APPEAL from the *Clark* Circuit Court.

DAVISON, J.—*Crawford* was the plaintiff below, and *Patterson* the defendant. The complaint alleges that one *William Armstrong* worked for the defendant, at his request, from *June* 7, 1853, till *October* 16, 1854, for which he, defendant, was to pay him, *Armstrong,* what his work was reasonably worth; that said work was worth 350 dollars, which is wholly unpaid, and that *Armstrong,* on, &c., assigned said demand, by writing (a copy of which is filed, &c.), to the plaintiff.

Defendant's answer contains three paragraphs—

1. A general denial.

2. That *Armstrong,* on the 3d of *June,* 1853, was, by the judgment of the *Posey* Court of Common Pleas, convicted of grand larceny, and sentenced to an imprisonment at hard labor in the state prison, for the term of five years;

---

*A petition for a rehearing of this case was filed on the 27th of *May,* and overruled on the 2d of *June.*

and that in pursuance of said judgment, he was impris-
oned in said prison, in the custody and under the exclu-
sive control of *David W. Miller*, then and ever since the
warden thereof, who compelled him to do work and labor
as a convict, conformably to the rules established for the
government of the prison, till the 24th of *November*, 1854,
when, upon a writ of *habeas corpus*, he was discharged
from prison. It is averred that during the imprisonment,
the defendant exercised no control over *Armstrong*; that
the work performed by him when so imprisoned is the
identical work charged, &c., and that defendant never
agreed to pay therefor, &c.

By the third defense, the defendant reiterates the facts
stated in the second, files a certified transcript of the judg-
ment of conviction in the *Posey* Court of Common Pleas,
and submits whether any right of action growing out of
the work performed by *Armstrong*, as set forth in the sec-
ond defense, can be assigned to the plaintiff so as to vest
in him a right to bring this suit.

Demurrers to the second and third paragraphs were sus-
tained. The issues made by the general denial were sub-
mitted to the Court, who found for the plaintiff 300 dol-
lars; and the Court, having refused a new trial, rendered
judgment, &c.

During the trial, the plaintiff offered in evidence the as-
signment referred to in the complaint. It reads thus:

"We, the subscribers, severally assign and transfer to
*Randall Crawford* all our several claims against *Samuel
H. Patterson* and *David W. Miller*, or either of them, for
labor severally done by us for them, or either of them, at
the penitentiary at *Jeffersonville;* and we severally appoint
said *Crawford* our attorney, for us severally to demand of
said *Patterson* and *Miller*, or either of them, whatever
sums may be due us severally, for such labor, and to com-
promise said demands, or any part of them, and to sue for
the same in our several names as our attorney shall judge
best. [Signed] *William Armstrong, Henry Davis, John
Burk, Joseph Nikerson, John Glavin, Frederick A. Nulter.*"

The introduction of this instrument was resisted, upon

the ground that there was no proof of its execution; but
the Court admitted it, without such proof, and the defend-
ant excepted.

Section 80 of the practice act says:

" Where a writing purporting to have been executed by
one of the parties, is the foundation of, or referred to in,
any pleading, it may be read in evidence on the trial of
the cause against such party, without proving its execu-
tion, unless its execution be denied by affidavit before the
commencement of the trial, or unless denied by a pleading
under oath." 2 R. S. p. 44.

This provision is cited in argument; but it does not
apply to the admitted evidence, because the writing does
not purport to have been executed by one of the parties.
*Riser* v. *Snoddy*, 7 Ind. R. 442.

There is, however, another section of the same act,
which provides that "the laws and usages of this state
relative to pleadings and practice in civil actions, &c., not
inconsistent herewith, and as far as the same may operate
in aid hereof, or supply an omitted case, are hereby con-
tinued in force." 2 R. S. p. 224, § 802. This, it is said,
continues in force § 216 of ch. 40 of the revision of 1843,
which declares "that any pleading denying or requiring
proof of the execution or assignment of any instrument
of writing which is the foundation of the suit, and is spe-
cially set forth in the declaration, shall not impose the
necessity of such proof, unless verified by oath." The sec-
tion thus recited is not in conflict with any provision of
the new code, but may well operate in aid of the existing
rules of practice. Section 802, should, in our opinion, be
so construed as to continue in force § 216, and that being
done, the rule of practice so continued, fairly applies to
the case at bar, and sustains the admission of the written
assignment, without proof of its execution.

As we have seen, the complaint avers that *Armstrong*
had done work for the defendant at his request, and as the
Court found in his favor upon the issues made by the first
defense, we must presume, the evidence not being in the
record, that the averments in the complaint were fully

proved. Hence, the only remaining questions in the case, relate to the action of the Court in sustaining the demurrers.

The material facts alleged in the second defense are, that *Armstrong* was sentenced by the *Posey* Court of Common Pleas; that he was imprisoned in the custody of *Miller*, the warden of the state prison, who compelled him to do the work charged, according to the rules of the prison; and that during his imprisonment the defendant exercised no control over him. As the Court of Common Pleas had no jurisdiction of the alleged felony (see *Spencer* v. *The State*, 5 Ind. R. 41), the judgment of that Court was, of course, void on its face, and can have no influence on the investigation of this cause, other than to show the manner in which *Armstrong* was made to work; and whether *Miller* would be liable for the false imprisonment is a question not before us. Evidently, he could not be held liable for the work and labor charged in the complaint, because it was not performed for him. But it is said that the defendant exercised no control over *Armstrong*. Still he received the benefit of his labor; and it seems to us that the mere fact that *Miller* controlled the action of the supposed convict, while laboring for the defendant, is not an available ground of defense. It is conceded, as a general rule, that "where labor is performed for the benefit of a party, without an express contract, if he knows it, and tacitly assents to it, he will be liable on an implied contract to pay a reasonable compensation therefor." This exposition seems to be correct. Does it apply to the case at bar? That the defendant knew of the labor charged in the complaint, and assented to it, is a proposition which the facts appearing in the record will not allow us to doubt; and for aught that appears in the defense in question, he did know that *Armstrong* had not been legally convicted. The defendant, being lessee of the state prison, and entitled by law to the labor of all those legally imprisoned and of no others, had a right to know, and was, in our opinion, bound to know who were legally in the warden's custody. But there is really nothing in the second

defense inconsistent with the fact of the work having been done for the defendant at his request, and with his knowledge of all the circumstances.

The third defense assumes that, though the defendant may be liable to *Armstrong*, by reason of the false imprisonment, still his right of action could not be assigned to the plaintiff. The code provides that "every action must be prosecuted in the name of the real party in interest; but this section shall not be deemed to authorize the assignment of a thing in action not arising out of contract." 2 R. S. p. 27, § 4. This section does not authorize, nor does it forbid, the assignment of a thing not arising out of contract. It adopts the equity rule, which required every action to be prosecuted in the name of the real party in interest, and simply declares that that section shall not be deemed to authorize such assignment. An assignee takes precisely the same interest in the assignment of every species of demand, either at law or equity, as he did before the new code. Hence, a demand capable of assignment before the code, so as to invest the assignee with the real interest, is such a demand as will now pass by assignment, so as to give the assignee a right of action. Mere personal torts, such as slander, assault and battery, and the like, which die with the party, and do not survive to his personal representative, are not assignable. *Comegys* v. *Vasse*, 1 Pet. 213. But in view of a statutory rule of procedure, identical with the one just recited, it has been held that torts for the taking and conversion of personal property, and generally such a right of action for a tort as would survive to the personal representative, may be assigned, so as to pass an interest to the assignee which he can assert in his own name in a civil action, as he formerly might in the name of the assignor, at law. *Robinson* v. *Weeks*, 6 How. Pr. 161.—*Hodgman* v. *The Western Railroad Corporation*, 7 *id.* 493.—Van Santv. Pl. 108, *et seq.*

In the case before us, the false imprisonment, in itself, is a mere personal tort, which would die with the party. Considered alone, it would result in injury to the prisoner, and not in any effective benefit to the party who held him

in custody. But here, there is seventeen months' labor actually performed in the service of the defendant, and of which he has received the proceeds. For this, in our opinion, a right of action would have survived to the assignor's personal representatives.

The appellee, however, assumes in argument that *Armstrong* had the right to waive the tort and sue in form *ex contractu;* and, the tort being waived, the transaction became one of contract, for all purposes, and, consequently, was assignable as other contracts. This position is. supported by authority, and seems to be correct. *Brewer* v. *Sparrow,* 14 E. C. L. 50.—*Smith* v. *Hodson,* 4 T. R. 211.—*Smith* v. *Cologan,* 2 *id.* 188, note (*a*).—*Ferguson* v. *Carrington,* 17 E. C. L. 330.—*Lucas* v. *Godwin,* 32 *id.* 309. The authorities to which we have referred, when applied to this case, induce the conclusion that the assignment before us, had it been made before the code, would have invested the assignee with the real interest in the demand in suit, and authorized him to sue for its recovery in the name of the assignor. And being thus the real party in interest, § 4, which we have quoted, does not forbid, but plainly allows, the assignee to sue in his own name.

It is insisted that *Miller* was a necessary party, and that the proceedings not showing that he was made a party, are, for that reason, erroneous. No objection relative to the want of parties appears to have been made in the Circuit Court. It follows that the alleged error is not available in this Court.

*Per Curiam.*—The judgment is affirmed with 5 per cent. damages and costs.

*W. T. Otto* and *J. S. Davis,* for the appellant (1).

*R. Crawford,* in person (2).

(1) Counsel for the appellant submitted the following argument:

The Circuit Court was of opinion that § 80, 2 R. S. p. 44, governed this case. If *Armstrong* had been before the Court, the assignment might have been read in evidence against him without proof, unless the execution thereof had been put in issue by an appropriate plea under oath, and the section would have been applicable. *Armstrong* was *not* a party to these proceedings, nor can the judgment be pleaded in bar to a suit by *Armstrong* against *Patterson* for the same cause of action. It is evident that the section has no reference to

the question under discussion, for the paper was offered in evidence against Patterson, who is not alleged to have executed it, and in a suit wherein the maker of the paper was not a party: The object of the suit was to recover for work and labor done, and not to enforce against Patterson any direct or collateral liability arising upon the paper. He was a stranger to it. The point is settled by a decision of this Court. *Riser* v. *Snoddy*, 7 Ind. R. 442.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

It is conceded that the conviction of *Armstrong* was not by a Court of competent jurisdiction, as it occurred on the 4th day of *June*, 1853. *Spencer* v. *The State*, 5 Ind. R. 41.—*Simington* v. *The State, id.* 479. The Circuit Court, therefore, did right in discharging him from the state prison, and in ordering him to be returned to the jail of *Posey* county. *Miller* v. *Snyder*, 6 Ind. R. 1.

It is submitted that the second defense is a bar to this action, and that it presents such a state of facts as renders the warden exclusively liable to *Armstrong* for his detention in the state prison under void process.

Inasmuch as there are many similar cases, the settlement of which will depend upon the determination by this Court of the questions involved in this suit, we might admit, although the record does not disclose it, that *Patterson* was the lessee of the state prison, and that the profits of his lease depended upon the number of the convicts. This does not change the question, and a reply alleging the fact would not avoid the bar.

It is no doubt true that where labor is performed for the benefit of a party, without an express contract, if he knows of it and tacitly assents to it, he will be liable upon an implied contract to pay a reasonable compensation therefor. This rule is not, however, of universal application. Where *A.*, for his own convenience and benefit, builds a house upon the land of *B.*, the latter will not be liable. *Frear* v. *Hardenburgh*, 5 Johns. 273. So the county commissioners cannot sue a husband for board furnished his wife, who was a pauper. *The Board of Comm'rs, &c.* v. *Hildebrand*, 1 Ind. R. 555. And where a father and his adult children live together, there is no implied undertaking on either part to pay for services rendered or board furnished. *Resor* v. *Johnson*, 1 Ind. R. 100.—*House* v. *House*, 6 *id.* 60. But the presumption, upon which the implied contract rests, may be overcome by proof. It will not be entertained against a party who had no power to direct a discontinuance of the work and whose acceptance of it was not a voluntary act, and no action will lie where it appears that the work was done without his request or privity. The work and labor was done by *Armstrong*, when in custody of the warden of the prison. It is the duty of that officer to receive the prisoners, to keep them in custody, to compel them to work, to enforce the rules for the government and police of the institution, and to discharge the prisoners at the expiration of their term of imprisonment, or when so ordered by a Court of competent jurisdiction. 1 R. S. p. 391.—2 *id.* pp. 379, 382, 383. In the discharge of the duties of his office, he does not incur a divided responsibility, but he, and he alone, is liable. After the decisions in 5 Ind. R. *supra*, he should have returned to the proper counties the prisoners who had been convicted of felonies by the Court of Common Pleas, after the taking effect of the Revised Statutes of 1852. *Patterson* did not receive *Armstrong* into custody, nor could he discharge him therefrom. He had no means of knowing by what authority he was in prison. He had no power to compel him to labor, or to release him therefrom, or in any way to interfere with the regulations of the prison, and the enforcement of

them by the warden. These circumstances show an absence of any request or privity, and a promise to pay is expressly negatived. Suppose that the state, instead of leasing the prison, had conducted it on her own account. Waiving her sovereignty as a bar to a suit, it is clear that no claim would exist against her for the acts of the warden, and it would make no difference whether the action be one nominally *ex contractu* or *ex delicto*, whether for the breach of an implied contract to pay for the value of the work, or the violation of his rights by imprisonment, nor could such a claim be the subject-matter of a set-off by *Armstrong*, in a suit brought by the state. *The United States* v. *Buchanan*, 8 How. 83, and the authorities there cited. If a party be committed to the state prison, without lawful authority, or be confined there after the expiration of the period for which he had been sentenced by a Court of competent jurisdiction, we cannot see upon what principle of law or justice *Patterson* could be rendered liable for such detention to any extent, much less that he should be compelled to pay such party the full wages of a laboring man.

The remaining questions which this record presents may be discussed upon the assumption that *Patterson* would be liable to *Armstrong*, by reason of the imprisonment of the latter.

Our code provides (2 R. S. p. 27, § 4): "Every action must be prosecuted in the name of the real party in interest, but this section shall not be deemed to authorize the assignment of a thing in action not arising out of contract."

The legislature evidently intended to provide one uniform mode of bringing suits in this state. Under our former statutes, the assignment of a chose in action did not, except in a few enumerated instances, vest in the assignee a legal title and interest. Where a Court of chancery had jurisdiction, the assignee of such choses as were the subject of transfer, could prosecute a suit in his own name for the enforcement of his rights. In a Court of law, the party beneficially interested, was compelled to use the name of the party having the legal title to recover. The interests of such a party, have, in this state, always been recognized and protected against any injurious interference by the nominal plaintiff, and even against his admissions. The distinction between actions at law and suits in chancery having been abolished, the party having the interest in the subject of the action must be the plaintiff. Where the claim is assignable by indorsement, the assignee is not a necessary party; but in other cases of assignment of claims arising out of contract, he must, by the sixth section, be made a defendant. Whilst our code has changed the mode of prosecuting a right transferred by an assignment, it has not rendered assignable, rights which were not so before its adoption. Whatever choses and rights were the subjects of transfer before the code, are so now, and such as were not, remain now as they were then.

A thing in action is defined by *Blackstone* (3 Blacks. Comm. 154,) to be "a right founded on, or arising from, contract." Mr. Justice GRIER, in *Sheldon* v. *Sill*, 8 How. 441, remarks: "The term chose in action is one of comprehensive import. It includes the infinite variety of contracts, covenants, and promises, which confer on one party a right to recover a personal chattel or a sum of money from another by action." These definitions are too narrow, as they exclude demands arising out of tort. Chief Justice BRONSON, in *Gillet* v. *Fairchild*, 4 Denio, 80, has, with his characteristic clearness, justly observed that "The term chose in action is used in contradistinction to chose in possession. It includes all rights to personal property, not in possession, which may

be enforced by action, and it makes no difference whether the owner has been deprived of his property by the tortious act of another, or by his breach of a contract. In both cases, the debt or damages of the owner is a thing in action." In its broadest import, the term comprehends demands for wrongs or injuries to the property or person. 2 Wood. Lec. 387.—2 Kent, 351.

Although this is the signification of the term, we have found no adjudicated case where, for the purposes of an assignment, it has been carried beyond a claim due upon contract, or such whereby some special damage has arisen to the estate of the assignor. In *Gillet* v. *Fairchild, supra,* it was held that the receiver of an insolvent corporation, who was empowered by law to sue for and recover "all the estate, debts, and things in action," belonging to the corporation, might maintain trover for the conversion of the personal property of the corporation before the plaintiff was appointed a receiver. This decision was founded upon the express words of the statute. Judge STORY, in commenting upon the operation of the bankrupt law of 1800, in *Comegys* v. *Vasse,* 1 Pet. 193, 213, remarks: "In general, it may be affirmed that mere personal torts, which die with the party, and do not survive to his personal representative, are not capable of passing by assignment." Under the operation of bankrupt and insolvent acts, where terms of the largest import are used, transferring all rights of action to the commissioners or assignees, it has never, to our knowledge, been held that a demand for damages for a personal tort, would pass. In *North* v. *Turner,* 9 Serg. and Rawle, 244, an action of trespass *de bonis asportatis,* was maintainable by the assignee, because it affected the bankrupt's property, and was, therefore, separable from the person; but it was conceded by Judge GIBSON, "that an action for a mere personal injury in the bankrupt, such as slander, assault and battery, &c., could not be maintained."

Independent of the concluding words of the section from our code, *supra,* we hold it to be clear that a right of action could not be transferred to this plaintiff. If such a right could not be the subject of a transfer under an insolvent or bankrupt law, *a fortiori,* it could not pass under a voluntary assignment. *The People ex rel. Stanton* v. *The Tioga Common Pleas,* 19 Wend. 73.

The section of our code is a literal transcript from the *New York* code. Voorhies' (N. Y.) Code, p. 82.

In *Thurman* v. *Wells,* 18 Barb. 500, this question was considered by the Supreme Court of *New York.* It was held that the provision in the code of that state did not authorize the assignment of a right of action for an unrecognized claim arising *ex delicto,* and that, consequently, a claim against a common carrier for a breach of duty, could not be assigned. In that case, the assignor was made a party defendant. The very point in controversy has thus been settled adversely to the plaintiff by the highest Court of the state from which we have derived our code of practice.

It may be urged, however, that in the decisions of Courts of the highest authority, it has been directly advanced that the injured party may, in some instances, waive the tort and sue upon an implied contract. We are aware of it. *Cooper* v. *Helsabeck,* 5 Blackf. 15, is in point. These cases relate to the form of the remedy, and do not touch the question now under consideration. In the case just cited, the owner of a wagon left it with the defendant, who subsequently converted it to his own use. The plaintiff might, therefore, have brought trover for the conversion, or assumpsit upon the implied contract of

the mandatory to take reasonable care of the property. But in the text-book, cited in the note to that case, it is justly observed that an action of trover cannot be converted into an action of assumpsit for goods sold and delivered, at the option of the plaintiff, but that the right is confined to a particular class of cases. In *Jones* v. *Hoar*, 5 Pick. 285, it was decided that assumpsit could not be maintained by the owner of land for the value of trees cut and carried away. Chief Justice PARKER remarked, "that where there is no contract, express or implied, an action *ex contractu* will not lie, and that the whole extent of the doctrine seemed to be, that one whose goods had been taken from him, or detained from him unlawfully, may, if the wrong-doer sell the goods and receive the money, waive the tort, affirm the sale, and have an action for money had and received for the proceeds." The rule, therefore, is not of universal application, but the question, relating, as it does, exclusively to the form of the action, is of no practical interest in *Indiana*. Our code allows but one form of action. The distinction between tort and contract is a substantial one, existing in the nature of things, and no attempt has been made to abolish it by legislation, or to confound the rights and liabilities which are incident thereto.

In the case of *Cooper* v. *Helsabeck, supra*, the owner of the property could not, after its conversion by the defendant, vest any right in another by a sale or assignment. *Gardner* v. *Adams*, 12 Wend. 297, is directly in point. In *Hall* v. *Robinson*, 2 Coms. 293, it is held that the owner may sell property in the possession of another; and if the latter subsequently convert it, the vendee may maintain an action. And in *Thurman* v. *Wells*, in Barb. *supra*, the doctrine in *Gardner* v. *Adams*, is reviewed and confirmed.

These cases are cited as establishing the doctrine that whilst there are instances where the owner of property may maintain an action in form *ex contractu*, the right of action is not susceptible of transfer, if it originates in a tort.

So where work has been done for a party, and by his compulsion, decisions may be found affirming his liability in an action in form *ex contractu*, although the preponderance of authority is the other way. In 3 Yeates, 250, the Court said that assumpsit would lie in favor of a free negro, for work and labor, against a person who held him in his service, claiming him as a slave. This decision settled merely the technical question as to the form of the remedy. Whether the party proceeded upon an implied contract, or for a tort, he would be entitled to adequate redress, and where no evil motive is attributed to the defendant, the measure of damages is the same. A party who is wrongfully imprisoned, can recover for the loss of his time; whether the wrongdoer derives any benefit from it or not. So, also, in actions for assault and battery, seduction, and other violations of absolute personal rights, the injured party may recover the expenses incurred, and the value of time lost, and the latter is determined by the occupation of the party. The authorities heretofore cited show that no valid transfer can be made of such rights of action. In *The People* v. *The Tioga Common Pleas*, 19 Wend. 73, a female out at service was debauched, and the person with whom she resided authorized her step-father to prosecute the suit in his name for her seduction, by an instrument sufficient in form to transfer the damages which might be recovered in the suit. It recited that after the seduction, the girl had returned home to her step-father, where she was likely to occasion him additional expense and

trouble, and contained a stipulation that the suit, although brought in the name of the nominal plaintiff, should be prosecuted at the expense of the step-father, who was to keep the plaintiff harmless from all damages, costs, and charges. An action on the case was brought. The gist of the action was the loss of service, for at common law the relation of master and servant must exist between the plaintiff and the seduced party at the time of the seduction. A recovery was had. The nominal plaintiff acknowledged satisfaction of record from the defendant, who had full notice of the execution and delivery of the instrument. The Court below denied a motion to set aside the satisfaction, and the Supreme Court refused a mandamus, upon the ground that a chose in action for a tort merely personal, is not assignable, so that a Court of law will protect the assignee against the subsequent fraudulent discharge of the damages recovered in a suit prosecuted for such tort, although the tort-feasor accept the discharge with full knowledge of the assignment. If, under our former practice, a suit had been brought against *Miller*, the warden, for false imprisonment, and *Armstrong* had executed to the now plaintiff a transfer of whatever damages could be recovered in the action, a Court of law, the only Court that had jurisdiction of the suit, would not protect the assignee against the acts and doings of *Armstrong* to his prejudice, because no right could pass by such instrument. As the party in interest must be the plaintiff, can such a right be maintained by the assignee? The party may call it an action for work and labor; but the Court will look at the substantial and controlling facts in the case, and not to the form of the allegations upon the record.

We, therefore, submit that the right of action, asserted by the plaintiff, originates in a tort, and that the attempted assignment of it will not enable him to maintain the action.

If *Patterson* had been concerned with *Miller* in the commission of the tort, and if the tort could be converted into a contract, the demurrer to the second defense was improperly sustained. The rights of the plaintiff and the liabilities of *Patterson* would then be such as arise upon contract, and the second defense alleging the acts of *Miller* in regard to said work and labor, shows the non-joinder of a co-contractor. That high degree of certainty, required in pleas of abatement, setting up the non-joinder of an omitted party, is no longer necessary. If the plea is correct in substance, but not in form, the remedy is not by demurrer, but by motion to have it made more certain and definite. Voorhies' (N. Y.) Code, § 144, and the authorities there cited. *Miller* being warden, the Court will take judicial notice that he continued in office up to the time of the institution of the suit. He was an officer of state. 1 R. S. p. 391.—1 Greenl. Ev., § 6.

The form of the demurrer was the same as in *Lane* v. *The State*, 7 Ind. R. 426.

(2) Mr. *Crawford's* brief was not found among the papers in the case.