THE BANK OF THE STATE OF NEW YORK *v.* JACOB W. VAN-
DERHORST.

Where an agent of a firm, authorized to draw its moneys from the bank and
apply the same to the uses of the firm, continues to do so after the death of
one of the members thereof, without knowledge on his part or on the part
of the bank, of such death, he acts within the scope of his authority, and his
acts bind the firm.

The authority of such agent to draw out and apply the money of such firm to
the uses thereof, continues in a qualified form after the death of one of the
members of such firm.

An indorsee of a negotiable promissory note, receiving it in the usual course of
business, without notice that it was made for a specific purpose, or of any
equities between the parties, is a holder in good faith; and taking the same
as collateral security, he will be deemed a holder for value.

BROWN, J.   The plaintiff in this action claims to recover
against the defendant as maker of a promissory note, dated
November 24th, 1859, for $4,400.80, payable, six months
after date, to the order of Kolff & Persuhn.   No question
was made upon the pleadings.   The action was tried before
Samuel E. Lyon, Esq., referee, who, in his report, finds the
following facts amongst others:

That the firm of Kolff & Persuhn was a limited partner-
ship, doing business in the city of New York, Kolff & Per-
suhn being the general partners, and one Ernest Fiedler
being the special partner.   That at the time the note bears
date, the defendant lent to the firm the note in suit, and, at
the same time, received from Kolff his promissory note of the
same date for the same amount, and payable to the order of
Jacob W. Vanderhorst, six months after date.   It was agreed
that neither party should negotiate or pass the notes away, or
make any use of them whatever.   The purpose of the exchange
of the notes being to enable Kolff to induce the special part-
ner, Fiedler, to think that a share of a vessel called the
"Holland," and owned by the firm, had been sold to Van-
derhorst.   Fredrick W. Stange was the duly constituted
agent of the firm, under a power of attorney in writing, and,
as such, under the authority of Kolff, Persuhn being absent

in the West Indies, applied to the plaintiffs for the discount of the note of the firm for $5,000, payable to the order of George W. Duer, the cashier of the plaintiffs, at sixty-five days after date, maturing June 2d, 1860, with certain col-lateral notes (of which the note in suit was one) as security. The loan was made accordingly, and the principal note, together with the collaterals, passed to the plaintiff. The defendant was not known to the plaintiff. No inquiry was made in regard to his credit or standing, and no representa-tions given as to the character of the collateral notes left as the security. On the 17th of April, 1860, Kolff left the office of the firm and did not return. He was afterward discovered dead, in a pond of water upon Staten Island, on the 27th of April, 1860, and was buried on Sunday, the 29th of April. The firm had a balance to their credit in the plaintiff's bank of $1,294.05, on the 18th of April, which Stange drew out, under his power of attorney, by 13 dif-erent checks for various sums, at dates extending from the 19th to the 28th of April, both inclusive. And a deposit in the meantime having been made to the credit of the firm, left a balance due them of $55.98. The firm were insolvent at the time of Kolff's disappearance, although the fact was not known until some time in May following. His disap-pearance was known to Mr. Duer, the plaintiff's cashier, but at what precise time does not appear. The firm had also, under discount with the plaintiff, another note for $4,000, secured in part by two collaterals, viz., the note of C. & R. Poillon for $593.54, and another note for $596.94, maturing in May, 1860. The note of Poillon was withdrawn from the bank by Stange in April, 1860, and by him given to Persuhn after his return in May. The collaterals, except the note in suit, were collected by the bank. The firm made an assign-ment for the benefit of their creditors, and crediting the amount collected by the bank, and a dividend made by the assignee, there was left a balance due upon the note at the time of the report, of $1,322.39. The referee found, as a conclusion of law, that the plaintiff was a *bona fide* holder of the note for value, and although made without

consideration, the plaintiff was entitled to recover the balance found due. He also found the defendant was entitled to a *pro rata* share of the balance remaining to the credit of the firm, and also of the Poillon note withdrawn from the bank. And he also found that he was not entitled to be credited with the amounts of the several checks drawn upon the fund in the bank by Stange, after Kolff's disappearance. Judgment was entered upon the report which was afterward affirmed at the General Term of the Superior Court of the city of New York, and thereupon the defendant appealed to this court.

The duty and obligation of the bank to retain the money on deposit to the credit of the firm at the time of Kolff's disappearance, and to retain it in satisfaction and part payment of the note, may be disposed of in a few words. The firm was dissolved, and, for all the purposes of future business and new enterprises, ceased to exist by the death of Kolff. The time of his death is not found by the report, nor, indeed, could be, from the evidence. He disappeared on the 17th, and was not discovered until the 27th of April. At this latter date all the moneys had been drawn from the bank, except the sum of seventy-five dollars, drawn on the 28th of the same month. For the purposes of settlement and liquidation, the copartnership still existed. The surviving partner, Persuhn, could draw out the moneys on deposit and apply them to the uses of the firm. As a general rule, a power of attorney is revoked by death. And the reason assigned is, that, as the power of one man to act for another depends upon the will and license of that other, the power ceases when the will or the permission is withdrawn. It may, at any time, be revoked by the principal, and is revoked by his death. Besides, there is a manifest absurdity in doing an act in the name of a person no longer in being. This firm, I have said, did not cease absolutely, nor did the right to draw out the money on deposit cease, by the death of Kolff. It survived to the survivor, Persuhn, as did the power to Stange exist in a qualified form; and he might, under it, draw out the money on deposit for the uses of the firm. The note in suit was not

due at the time, and the only ground upon which the bank could have refused to part with the money was the want of power by Stange to draw the checks. Persuhn, the survivor, taking no exception, none, I think, can be taken by others, more especially as the bank seems to have paid over the money in good faith, and without notice of the death of Kolff and the consequent dissolution of the firm.

It remains to consider whether the circumstances under which the bank became the holder of the note are such as deprive it of the power to enforce its payment by the maker. Is it a holder in good faith and for value? It was not made for the purpose of being discounted or used in any way by Kolff and Persuhn, the payees. On the contrary, they agreed not to do anything of the kind. They received it for the purpose of being exhibited to Ernest Fiedler as evidence of the sale of an interest in the vessel, and for no other use. It was, however, payable to their order, and under the law-merchant was negotiable, by indorsement, in the market, being an instrument perfect and complete in itself. An indorsee of a negotiable promissory note, who receives it in the usual course of business, without notice that it was made for a special purpose and applied to uses different from those for which it was intended by the original parties, and who is without knowledge or notice of the equities between the parties, is regarded as a holder in good faith. In the present instance, the bank had no notice of the purpose for which the note was made, or of the agreement between Kolff and the defendant in regard thereto. Nor had it any reason to suspect that it was otherwise than business paper which might be passed away and accepted with the usual duties and obligations of the parties attached thereto. Indeed, I do not understand that the defendant intends seriously to combat the proposition that the plaintiff is a holder of the note in good faith. Nor do I think he can successfully maintain that the plaintiff is not a holder for value. The bank did not discount the note in suit, nor deal with it, as the principal foundation of the loan to Kolff & Persuhn. Nor was that essential to impart to it the character of a holder for value.

The rule is, that, if the holder parts with anything of value —
money, property or existing securities — at the time he receives
the note, and upon the faith of its being paid, he is, *ipso facto*,
clothed with the attribute of a holder for value. The note
which the bank did discount for the firm was for $5,000, pay-
able to the order of the plaintiff's cashier, and was, therefore,
without the indorser usual in such transactions. And the
note in suit, with the other collaterals, was received by it as
the security, and supplied the place of the usual indorser.
The bank parted with its money upon the faith that the col-
lateral notes would be paid in the event that the principal
note was not. We thus reach this proposition, whether the
holder of a negotiable note, who receives it as collateral secu-
rity for the repayment of a loan of money upon another note,
at the time of the loan is a holder for value. The proposi-
tion, upon principle as well as upon authority, is too clear to
admit of doubt. If the essence of the valuable consideration
consists in parting with money, property or other valuable
thing, it can make no difference, upon the question of con-
sideration, whether the paper sought to be enforced is to be
deemed the principal or only the collateral security. The
holder parts with his money or property upon the faith of
both, and not upon the faith of one of them. If he is a
holder for value of the principal security, so he is of the col-
lateral. The two, in regard to the element of consideration,
are inseparable. The elementary writers and the adjudicated
cases affirm this rule. In the case of *The Bank of Chenango* v.
*Hyde et al.* (4 Cow., 567), the defendants made their note, to
be discounted by and payable at the Chenango Bank, which
declined to discount it. One Birdsall, at the request of
Hyde, advanced him the money, upon an agreement that the
note should be left at the bank as his security, who should
hold it for him. Birdsall afterwards sued and recovered
against Hyde for money lent, but could not collect his judg-
ment. He afterwards brought an action upon the note in
the name of the bank, for his own benefit, and recovered — the
court holding that taking the note as collateral to the loan
made him a holder for value. In *The Bank of Rutland* v.

*Buck* (5 Wend., 66), the action was upon a promissory note made by Spear & Everest, and the defendant Buck as their security. The note was made to enable the two former to raise money for their own accommodation. It was offered to the bank for discount, which was declined. It was afterwards, and before it fell due, delivered by Spear & Everest to one House and two others, as collateral security for the payment of a judgment. The judgment having become due, it was sued, in the name of the bank, for the use of House and his associates, and judgment rendered for the plaintiff. In *The Mohawk Bank* v. *Covey et al.* (1 Hill, 513), the bank received the note of one Borst, indorsed by Covey, Livermore and Vorhees, before it became due, in payment of other notes of Borst, indorsed by Vorhees alone, delivering up and discontinuing a suit upon the latter, at the same time. It was held to be a sufficient parting with value to enable the bank to claim as a *bona fide* holder for value. In *Youngs* v. *Lee* (2 Kern., 551), the owners of a note, due in a few days, deposited it in a bank, where it was payable, for collection, withdrew it, and surrendered it to the maker, upon receiving from him his note, payable in three months, indorsed by a third person. It was held that they were holders of the new note for value to the extent of the note surrendered, and might recover the amount against the indorser, notwithstanding the delivery of the note to them was a diversion of it by the maker from the purpose for which it had been indorsed — they having taken it without notice of such diversion. *Boyd* v. *Cummings* (17 N. Y., 101) was the case of a note indorsed by the defendant Cummings for the accommodation of one Mackay, and to be used for a particular purpose. He diverted it, and transferred it to a judgment creditor, before maturity, as security for the payment of a judgment, and in consideration, also, of the discontinuance of proceedings supplementary to the execution. It was held, that, having no notice of the purpose for which the note was made, the plaintiff was a holder for value, and entitled to recover. (See, also, *Spencer* v. *Ballou*, 18 N. Y., 327.) *Stetthiemer* v. *Myer* (33 Barb. S. C., 215) was a case where a negotiable note was taken in

good faith, before it became due, in payment and satisfaction of a pre-existing indebtedness, and the evidence of such indebtedness destroyed, being a due-bill.  The note was an accommodation note, made for a special purpose, and diverted to the payment of the due-bill.  It was held that the person taking such note was a holder for value, and, having no notice of the purpose for which the note was made, entitled to recover. (See Chitty on Bills, 80; 1 Parsons on Notes and Bills, 219.)

The counsel for the defendant contends that, if the plaintiff holds the note in pledge as collateral security for the $5,000 note discounted by it for Kolff and Persuhn, it cannot set up a claim as *bona fide* owner; that it succeeds to the rights of the pledgor, and nothing more; and a defense available against the paper in the hands of the pledgors, is equally available against it in the hands of the pledgee.  And we are referred for authority to the cases of *Garlick* v. *James* (12 Lou., 146), and *Wheeler* v. *Newbold* (16 N. Y., 392).  This argument does not distinguish actions between the pledgor and pledgee of a promissory note or other chose in action, and actions by those claiming as the indorsees of the same promissory notes for value, acquired before due and in good faith, in the usual course of business.  The two cases to which we are referred define and determine, to some extent, the rights, duties and obligations of pledgor and pledgee in their dealings with one another; but they illustrate no principle useful or applicable to the subject we are considering.  It is doubtless true, as a general rule, that neither the vendor nor the pledgor of personal property can impart to the vendee or pledgee any greater interest in the subject of the sale or pledge than they themselves possess at the time of the transfer.  So that, if their right of property in the thing sold or pledged is qualified or special in its nature, and not general or absolute, the person acquiring the subject from them holds by the same title and no other.  This rule does not obtain, however, when the subject of the sale or pledge is commercial paper negotiated by the vendee or pledgee before due to a purchasee for value, and without notice, in the usual course of business.  In such

a case the law-merchant intervenes for the benefit of trade, and overrides the general rule to which I have alluded, and declares that the holder shall take the same absolutely freed from all the conditions and stipulations upon which it was originally made and delivered.   There is no difference in principle between the case of a holder deriving his title to the paper from a pledgee or from a payee, to whom it was delivered for a particular and special purpose.

The judgment of the Superior Court should be affirmed, with costs.