[No. 1154.]

## THOMAS E. HAYDON, Respondent, *v.* OLINTA NICOLETTI et al., Appellants.

Negotiable Note—Rights of Pledgee and of Owner.—A pledgee of a negotiable note, as collateral security, is entitled to be protected as a *bona fide* holder to the same extent as one who becomes the absolute owner, and may maintain suit therein in his own name as the real party in interest. The only difference between the rights of such parties is that the absolute owner may recover in full, while the pledgee, if there be equities, is restricted to the extent of his advances.

Idem—Partnership—Evidence of.—A negotiable note, payable to two or more persons jointly, is no evidence that it is owned in partnership; nor is the fact that such note is in the actual possession of one of the payees such evidence. Evidence reviewed: *Held,* that no partnership or agency existed between the payees of the notes in question.

Idem—Title.—Title to a negotiable note, payable to order, passes only by indorsement and delivery.

Idem—Indorsement by One Payee.—A negotiable note, payable to two or more persons jointly, indorsed by only one of the payees, is subject to any equities in favor of the maker, the same as though it had not been indorsed by either. Such a note is payable to all the payees, or to their joint order, and cannot be transferred except by the joint indorsement of all the payees.

Appeal from the District Court of the Seventh Judicial District, Washoe County.

The facts are stated in the opinion.

*Robert M. Clarke,* for Appellants:

I. The pledging of the Nicoletti note to T. L. Lagomarsine was without authority, and did not pass the title to the bank. It was in no sense a partnership note, it was neither given to them as partners, nor was it given to secure a partnership debt.

II. The note being payable to T. L. and A. S. Lagomarsine jointly, or to their final order, the endorsement of both is necessary to pass the title of either. (2 Par. on Notes and Bills, 4, 5; *Smith* v. *Whiting,* 9 Mass. 334.)

III. The sale of the notes by the sheriff to Haydon did not vest in him the title to the Nicoletti note, nor to the mortgage given to secure the same. As the title to the Nicoletti note was not in the bank; as the bank's interest was at most a mere equity, which it possibly acquired by the assignment of T. L. Lagomarsine's interest, such interest being equitable merely and not legal, was not subject to attachment or execution; and Haydon acquired nothing by the attachment proceedings and sale, except the Lagomarsine notes. (Civil Pr. Act, secs. 128, 130, 131; Drake on Attach. sec. 547; *Presnal* v. *Mabry*, 3 Por. 105; *Hassie* v. *G. I. W. U. Congregation*, 35 Cal. 378; *May* v. *Baker*, 15 Ill. 90; *Hoyt* v. *Swift*, 13 Vt. 133; *Reinhart* v. *Hardesty*, 17 Nev. 141.)

*Thomas E. Haydon, in propria persona,* for Respondent:

I. The delivery of *the possession* of the Nicoletti note *without the indorsement* of either of the payees was all that was necessary to constitute a pledge of the note. (Jones on Chat. Mort. sec. 4; Story on Bail. sec. 296; Redfield on Car. & Bail. sec. 663; Story on Bail. secs. 287, 290.) By the delivery of the Nicoletti note in pledge, the pledgee could sue both the collateral and principal debtors at the same time and in his own name. (Jones on Mort. secs. 1374, 1375; Redfield on Car. & Bail. sec. 666; *Comstock* v. *Smith*, 23 Me. 202; Story on Bail. sec. 321; 2 Kent Com. sec. 581; *Nelson* v. *Wellington*, 5 Bosw. 178; *Lamberton* v. *Windom*, 12 Minn. 232, 242; *Wheeler* v. *Newbould*, 16 N. Y. 392; *Fletcher* v. *Dickinson*, 7 Allen 23.)

II. It is not indispensable that the Nicoletti note should have belonged to the pledgor, T. L. Lagomarsine; it is sufficient if it is pledged with the consent of the owner. (Story on Bail. secs. 291, 296; *Jarvis* v. *Rogers*, 13 Mass. 105.) Plaintiff being the real party in interest, could sue upon this note without any indorsement by either of the payees. (Parsons on Notes & Bills, 47, 48; *Kelly* v. *Smith*, 1 Met. (Ky.) 313; 11 Barb. 620.)

III. A promissory note or bill of exchange, being a

personal chattel, may be assigned without indorsement or writing upon it, or upon any paper. (2 Parsons on Notes & Bills, 52, 54 ; *Beard* v. *Dedolph*, 29 Wis. 142.) But even had an endorsement been necessary the indorsement of T. L. carried his interest, and if authorized as agent, partner or otherwise his indorsement carried also the title of A. S. L. (1 Dan. on Neg. Inst. sec. 701, 707 ; *Pease* v. *Dwight*, 6 How. 190.) Such a transfer of a negotiable note is protected against all defenses subsequently arising. (Dan. on Neg. Inst. secs. 781, 782 ; *Beard* v. *Dedolph*, 29 Wis. 142, *supra* ; *Richardson* v. *Rice*, 6 Rep. 636 ; 1 Pars. Notes & B. 263 ; 2 Pars. Notes & B. 54.)

IV. A purchaser at execution sale acquires all the defendant's title whatever it may be. (Freeman on Ex. secs. 335, (note 7,) 342, 343.)

By the Court, LEONARD J.:

Defendants appeal from the judgment and order denying their motion for a new trial. It is alleged in the complaint that on the twentieth of December, 1878, defendant Nicoletti executed to defendants T. L. Lagomarsine and A. S. Lagomarsine his promissory notes, each for nine hundred and twenty-five dollars, payable in nine and twelve months from date, and, to secure payment of the same, gave a mortgage on land described. These averments are not denied. It is alleged, further, that T. L. Lagomarsine and A. S. Lagomarsine pledged and delivered the first of said notes to the Reno Savings Bank, July 11, 1879, to secure a loan of two hundred and forty dollars, made on said date to T. L. Lagomarsine ; that on July 14, 1879, at the request of T. L. and A. S. Lagomarsine the bank loaned to the former the further sum of seventy dollars, upon an agreement that the said Nicoletti note, before pledged, should be security therefor ; that at the time of said loans T. L. Lagomarsine gave to the bank his individual notes for the same.

In their answer defendants admitted that T. L. Lagomarsine borrowed the sums mentioned, and gave his notes therefor, but denied that T. L. Lagomarsine and A. S.

Lagomarsine pledged or delivered the Nicoletti note as security to the bank.   Plaintiff alleged also that T. L. Lagomarsine indorsed and delivered the Nicoletti note to the bank as agent and partner of A. S. Lagomarsine by indorsing his own name thereon.   Defendants admitted that T. L. Lagomarsine indorsed and delivered the note, but denied that he was agent or partner of A. S. Lagomarsine, or that he had any authority to act for or bind the latter in the premises; denied that A. S. Lagomarsine agreed to indorse, assign, or deliver, as a pledge or otherwise, said note, or that he did so.   As new matter, defendants allege that Nicoletti paid the note pledged to the bank before the commencement of this action, and that T. L. and A. S. Lagomarsine, for value received, sold, assigned, indorsed and delivered the second note, due in twelve months from date, to J. C. Hampton, and that said note is due and unpaid.

These facts are undisputed, viz.:

The note in question was payable to A. S. Lagomarsine and T. L. Lagomarsine, or order.   In July, 1879, before maturity, T. L. Lagomarsine pledged the note as security for a loan by the bank to himself, individually, of two hundred and forty dollars, and a few days thereafter he obtained seventy dollars more, on the same terms.   A. S. Lagomarsine received no benefit from the money borrowed, and did not know of the assignment until April, 1881, when the note was sold by the sheriff under an execution issued upon a judgment in favor of the executor of Larcomb's estate.   At the time of the loan by the bank, T. L. Lagomarsine indorsed his name, and was about to indorse his brother's also, when the cashier refused to allow him to do so, saying he prefered to have the other payee indorse for himself.   T. L. Lagomarsine promised to have his brother make his indorsement.   The bank received the note in this condition, as collateral, and A. S. Lagomarsine never indorsed it.   Nicoletti was not notified by the bank of the assignment, and he had no knowledge thereof, until April, 1881.   At the time of the execution of the notes and mort-

gage by Nicoletti, it was agreed between him and T. L. Lagomarsine that he might pay any of the debts of the latter in Virginia City, and receive credit therefor upon the notes. In the fall of 1879 a settlement was had between them, and it was found that Nicoletti had paid seven hundred and eighty dollars. This amount T. L. Lagomarsine agreed to credit on the first note, the one in question, but failed to do so, for the reason that it was in possession of the bank. Another settlement was had in the fall of 1880, and it was found and agreed that Nicoletti had paid of T. L. Lagomarsine's debts, four hundred and thirty dollars, during that year. It was agreed that this amount should be credited on the notes, and that the first should be given up as paid. T. L. Lagomarsine gave Nicoletti receipts for the amounts stated, at the dates of settlement, but the credits were not placed upon the notes. The court finds that between the date of the note and July 11, 1879, when it was assigned to the bank, Nicoletti paid, of the debts of T. L. Lagomarsine, three hundred and twenty dollars, but that the bank had no notice thereof at that time or subsequently; and that, after the assignment, Nicoletti paid the further sum of eight hundred and ninety dollars, making in all one thousand two hundred and ten dollars, none of which was indorsed on the note or mortgage.

Special issues were submitted to the jury, and, from the facts found by them and the court, the court declared, as conclusions of law, that the Nicoletti notes to T. L. Lagomarsine and A. S. Lagomarsine were negotiable; that they were transferred in good faith and for a valuable consideration, before maturity, as pledges to secure the payment of loans made by the bank and Hampton; that T. L. Lagomarsine was authorized as a partner and agent of A. S. Lagomarsine to pledge them; that the delay of A. S. Lagomarsine to assert any rights in said notes and mortgage after he knew of their disposition by T. L. Lagomarsine operated as a legal ratification of the transfers; that the transfer to the bank protected the bank from all equities in favor of Nicoletti, and from all payments made by him, of

which the bank had no notice, to the extent of the principal and interest of the loans made by the bank to T. L. Lagomarsine; that the bank was not obliged to notify Nicoletti of the assignment in order to protect itself from any payment or other equities existing or subsequently arising in his favor against T. L. and A. S. Lagomarsine; but that said payments beyond the bank's loans to T. L. Lagomarsine, with interest, were operative to prevent any judgment against Nicoletti, beyond the amount of such loan and interest.    A decree was entered accordingly.

The principal question to be decided is whether, under the circumstances, Nicoletti is entitled, as against plaintiff, to receive credit upon the note in suit for all or any portion of the debts of T. L. Lagomarsine, paid by him before knowledge of the assignment to the bank.    For the purposes of this case, without discussing or deciding the question, we shall concede that plaintiff acquired, by purchase of this note at sheriff's sale, all the rights that the bank acquired by the assignment and loan; that if the bank would have been protected against Nicoletti's equities, then plaintiff is.    It is admitted, also, that a party receiving negotiable paper as collateral security is entitled to be protected as a *bona fide* holder, to the same extent as one who becomes the absolute owner, and that he may bring suit in his own name, as the real party in interest.    (2 Pars. Bills & Notes, 54; *Bank* v. *Vanderhorst*, 32 N. Y. 556; *Brookman* v. *Metcalf*, Id. 595; *Lindsay* v. *Chase*, 104 Mass. 253; *Bonaud* v. *Genesi*, 42 Ga. 639,    The only difference between the rights of an absolute *bona fide* owner for value and a *bona fide* holder as collateral security, as against the maker, is that the former may recover in full, and the latter, if there be equities, is restricted to the extent of his advances. (*Matthews* v. *Rutherford*, 7 La. Ann. 225.)

The jury found, and the court adopted the finding, that T. L. Lagomarsine and A. S. Lagomarsine were "partners in the two Nicoletti notes."    We do not think there was the slightest evidence sustaining such conclusion, and, if we are correct, the element of partnership should not be con-

sidered in our discussion. Let us test our conclusion by the record. In the first place, in the note itself, there was nothing to indicate a partnership. It was payable to the two payees named, jointly, or their order. In form and substance it was like any other negotiable note owned jointly by two or more individuals. The bank knew there was but one way to obtain the legal title to the note; but one mode of transfer, according to the law-merchant, and that was by the indorsement of the payees. Acting upon that knowledge, the cashier refused to permit one of the payees to indorse for the other, preferring to have the latter indorse for himself, since, as he expressed it, "the note was made jointly to T. L. Lagomarsine and his brother." The bank evidently regarded the transfer as incomplete at that time, and trusted in the personal promise of T. L. Lagomarsine to get the indorsement of his brother to complete it. T. L. Lagomarsine did not claim that the note was owned by the payees in partnership, but, on the contrary, said it belonged to him, and that he had the right to indorse his brother's name. In the face of such a note, the bank knew that, as to all persons but T. L. Lagomarsine, it would, at its peril, trust in such claim of ownership and representation of power, and the result was as before stated; that is to say, the note was received as the joint property of the payees, with the indorsement of one, but with the intention and expectation of getting the other.

The jury found that the two brothers were partners in farming, from 1876 until some time in 1878; that they were not partners in anything except the two Nicoletti notes, or engaged in any other business together, after September 8, 1878. The notes and mortgage were given under the following circumstances: T. L. and A. S. Lagomarsine owned the Steamboat ranch together. In 1878, before September, T. L. Lagomarsine bought his brother's interest, agreeing to pay him one thousand dollars therefor. He paid seventy-five dollars, but was unable to pay, at that time, the balance of nine hundred and twenty-five dollars. About the same time T. L. Lagomarsine sold his interest in the

Truckee ranch to Louis Lagomarsine for one thousand eight hundred and fifty dollars. Soon after, Louis sold a part of his interest to Nicoletti. After these transactions, Nicoletti was owing Louis one thousand eight hundred and fifty dollars; Louis was owing T. L. Lagomarsine one thousand eight hundred and fifty dollars; and T. L. Lagomarsine was owing his brother, A. S. Lagomarsine, nine hundred and twenty-five dollars. For the sake of convenience, and to save expense, it was agreed among them that Nicoletti should give his notes and mortgage to T. L. Lagomarsine and A. S. Lagomarsine, and so settle the entire indebtedness. We quote from the testimony of T. L. Lagomarsine, which shows the nature of the arrangement:

" We agreed that, instead of Louis mortgaging to me, and Nicoletti mortgaging to Louis, Nicoletti should make a mortgage direct to me for one thousand eight hundred and fifty dollars, which Louis owed me, and in this way settle the indebtedness to all of us. I told my brother I could not pay him the nine hundred and twenty-five dollars, which I owed him, at that time, but if he wanted to do so, he could have a half interest in the mortgage which Nicoletti was to make to me. He agreed to this; and so the mortgage and notes were made to my brother and myself jointly, and our indebtedness all around settled. We were to each own one-half of the notes and mortgage."

The other parties to these transactions testified to the same effect, and there was nothing to contradict their statements. If Nicoletti had given a note and mortgage for nine hundred and twenty-five dollars to A. S. Lagomarsine, and a note and mortgage for the same amount to T. L. Lagomarsine, in satisfaction of the entire indebtedness of all the parties, it would hardly be claimed that T. L. Lagomarsine and A. S. Lagomarsine would have been partners in the two notes. In that case each would have owned his own paper, and now, both have a joint ownership. But a negotiable note, payable to two or more persons jointly, like the one in question, is no evidence that it is owned in partnership; nor is the fact that such note is in the actual, manual

possession of one of the payees, such evidence. It cannot be held by all at the same time, and whoever has it in possession holds it for himself and the other payees.

Without pursuing this question further, we repeat the conclusion before expressed, that there was no evidence showing a partnership in the two notes. Such being the case, it will not be necessary to consider the question whether one partner, by the indorsement of his own name only upon negotiable paper, payable to a partnership before maturity, so transfers it as to relieve a purchaser for value of equities existing between the maker and payees."

But, in addition to the findings that the note was owned in partnership, the court concluded that, as an agent of A. S. Lagomarsine, T. L. Lagomarsine was authorized to pledge the note in question to the bank, and that the delay of the former to assert any rights in the same or the mortgage, after he knew of their disposition by T. L. Lagomarsine to the bank, operated as a legal ratification of the transfer. We think the evidence justifies the finding that T. L. Lagomarsine was authorized to do just what he did do. He could pledge the note as collateral security, indorse his own name, but not his brother's. And that was all he did—all that the bank desired him to do. His promise to get the indorsement of his brother was a personal obligation that was not performed, and the upshot of the whole matter is that the note was pledged without the indorsement of one of the payees, and such was its condition at the trial. Surely, A. S. Lagomarsine could not, and did not, ratify anything that was not done by T. L. Lagomarsine. Upon these facts, then, what were the rights of Nicoletti? The statute provides as follows:

"All notes in writing, made and signed by any person, whereby he shall promise to pay to any other person, or to his order, or to the order of any other person, or unto the bearer, any sum of money therein mentioned, shall be due and payable as therein expressed, and shall have the same effect, and be negotiable in like manner, as inland bills of exchange, according to the custom of merchants." (Comp. Laws, sec. 9.)

According to the *lex mercatoria* the title to negotiable paper, payable to order, passes only by indorsement and delivery. (*Trust Co.* v. *Nat. Bank,* 101 U. S. 71; *Whistler* v. *Forster,* 108 C. L. R. 255; Daniel, Neg. Inst. sec. 780.)

The statute further provides that:

"In the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defense existing at the time of, or before notice of, the assignment; but this section shall not apply to a negotiable promissory note, or bill of exchange, transferred in good faith, and upon good consideration, before due." (Comp. Laws, sec. 1068.) "Every action shall be prosecuted in the name of the real party in interest." (Sec. 1067.)

If the bank would have been protected against the equities of Nicoletti, it is because this negotiable note, payable to order, was transferred to it in good faith and upon good consideration, before due.

The legislature did not intend to protect non-negotiable notes against the equities existing in favor of the makers before notice of assignment, although assigned for value before maturity. Did it intend to protect notes negotiable, payable to order, but not indorsed by the payee? If it did, it intended to overturn a well-established rule of the law-merchant, recognized and enforced the world over. Such was not the intention. At the time the code was passed there was a well-established mode of transferring a negotiable promissory note payable to order, and no other was recognized, which was by indorsement. If it was assigned for value before maturity, but not indorsed, it was subject to the equities in the hands of the assignee that it would have been in the hands of the payee. This principle has not been changed by the statute. A note like the one under consideration, not indorsed, is not "transferred in good faith." (*Richards* v. *Warriug,* 39 Barb. 51–54; *Bush* v. *Lathrop,* 22 N. Y. 547; *Patterson* v. *Crawford,* 12 Ind. 245; *Whistler* v. *Forster, supra,* 257; *Trust Co.* v. *Nat.*

*Bank, supra; Terry* v. *Allis,* 16 Wis. 479; *Calder* v. *Bill-
ington,* 15 Me. 398; *Savage* v. *King,* 17 Me. 302; *Hedges* v.
*Sealy,* 9 Barb. 217; *Pease* v. *Rush,* 2 Minn. 111.)  " A
promissory note made payable to order may be trans-
ferred without indorsement, so as to vest the property in it
in the purchaser.  Transferred in that manner, it was
formerly necessary to bring the action upon it in the name
of the payee; under the code it may be brought in the
name of the real owner.  But such a transfer does not
clothe the assignee with all the rights of an indorsee of
negotiable paper, transferred to him in the usual course of
business; it gives him the title to the note, but subject to
the rules applicable in case of an assignment of any other
chose in action.  In short, a note negotiable by indorse-
ment, but not indorsed, transferred by delivery, and a note
not negotiable, transferred by delivery, are equally open to
every equitable defense which the maker had against it at
the time of transfer; and if the payee could not have
recovered at that time, the assignee cannot." (Edw. Bills,
2d ed. 270.)  " The rule is settled, by an unbroken series
of authorities, that the assignee of a thing in action not
negotiable takes the interest assigned, subject to all the
defenses, legal and equitable, of the debtor who issued the
obligation.   *   *   *   That is, when the original debtor or
trustee, in whatever form his promise or obligation is made,
if· it is not negotiable, is sued by the assignee, the defenses,
·legal and equitable, which he had at the time of the assign-
ment, or at the time when notice of it was given, against
the original creditor, avail to him against the substituted
creditor." (2 Pom. Eq. Jur. sec. 704.)

*Hedges* v. *Sealy* was decided in 1850 (9 Barb. 217).  The
New York Code was adopted in 1848.  The case was on all
fours with the one in hand, with this exception; the note
was payable to one person, who pledged it as collateral
security for money loaned, without indorsement, while in
this case the note was payable to two, and indorsed by one.
The court said:

"Although the plaintiff took the note upon sufficient

consideration, and the transfer was consummated by the actual delivery, yet the plaintiff is not a *bona fide* holder, or indorsee, and entitled as such to recover against the maker, if the proof shows that he had a good defense against it in the hands of Roberts. To entitle the plaintiff to protection from such a defense, in addition to the valuable consideration paid by him for the note, it must also appear that he is the indorsee. The pleadings disclose that it was payable to order, and was not indorsed by the payee. In respect to the note the plaintiff is a mere assignee, and his rights are to be settled by the same rules that govern the case of an assignee of any other chose in action. The rule that the indorsee may recover where the payee may not, is founded on the commercial policy of sustaining the credit of negotiable paper. The paper in question was negotiable, but it was not negotiated. It is payable to Robert Roberts or order, and he has not indorsed it. * * * A note negotiable, but not indorsed, transferred by delivery, and a note not negotiable transferred by delivery, are open to every equitable defense which the maker had against them at the time of transfer; and if the payee could not have recovered at that time, the holder cannot.''

''A promissory note, like any other personal property, can be transferred by mere delivery so as to pass the title, and the right to sue in the name of the holder when a note is payable to order, and is found in the hands of a person not the payee, without the indorsement of the payee, the difference between such a holder and one who holds by indorsement, is that the former is not entitled to the privileges of a *bona fide* holder, while the latter is; a note payable to order, passed without indorsement, is not taken in the regular course of business, and is subject to the same disabilities as if it had been taken after due, but the title passes sufficiently to maintain a suit in the name of the owner.'' (*Pease* v. *Rush*, 2 Minn. 111.)

At the time of that decision the Minnesota code was like ours. (Stat. Minn. 1849–58, p. 534.) To the same effect is *Terry* v. *Allis*, 16 Wis. 479, under a statute like ours. (Rev. Stat. Wis. 1858, p. 714.)

*Beard* v. *Dedolph*, 29 Wis. 141, supports the same doctrine, although holding, also, that an indorsement made after maturity of a note assigned, but not indorsed before maturity, relates back to the time of delivery and protects the assignee against everything subsequent to the delivery. This doctrine is repudiated, however, by many well-considered cases. (*Clarke* v. *Whitaker*, 50 N. H. 475, and cases there cited ; *Lancaster Bank* v. *Taylor*, 100 Mass. 22. See, also, *Grimm* v. *Warner*, 45 Iowa 108 ; *Seymour* v. *Leyman*, 10 Ohio St. 285 ; *McCrum* v. *Corby*, 11 Kan. 470 ; *Franklin* v. *Twogood*, 18 Iowa 515 ; *Patterson* v. *Cave*, 61 Mo. 439 ; *Boeka* v. *Nuella*, 28 Mo. 180 ; *Hadden* v. *Rodkey*, 17 Kan. 429.)

We have considered the questions before discussed, upon the theory that a note like the one in suit, indorsed by one only of two joint payees, is subject to any equities existing in favor of the maker, the same as though it had not been indorsed by either ; and such, we think is the law. Such a note is payable to both, or to their joint order. By the law-merchant it cannot be transferred except by the joint indorsement of all the payees. (*Ryhiner* v. *Feickert*, 92 Ill. 311, and authorities there cited.) If a note unindorsed is not transferred in good faith, then one indorsed by a part only, is in the same situation. Such a note is surely only transferred in part. (2 Pars. Bills & Notes, 4, 5 ; *Smith* v. *Whiting*, 9 Mass. 333 ; *Dwight* v. *Pease*, 3 McLean, 94 ; *Bennett* v. *McGaughy*, 3 How. (Miss.) 193 ; *Wood* v. *Wood*, 1 Har. (N. J.) 428 ; 1 Daniel, Neg. Inst. sec. 684 ; *Lowell* v. *Reding*, 23 Am. Dec. 546.) We are satisfied that plaintiff is in no better situation than the payees of this note would have been had they brought this suit ; and, in that case, Nicoletti would have been entitled to credit for all payments made, according to the agreement entered into at the time of the execution of the notes and mortgage, and before notice of the assignment. (*Davis* v. *Neligh*, 7 Neb. 82 ; *Pecker* v. *Sawyer*, 24 Vt. 464 ; *Britton* v. *Bishop*, 11 Vt. 70.)

The judgment and order appealed from are reversed, and the cause remanded.