## MORE v. FINGER et al.*

### L. A. No. 548; September 11, 1899.

#### 58 Pac. 322.

**Replevin—Negotiable Paper.—Where Defendants Obtained** possession of a note from one whom they knew had parted with his title thereto, plaintiff is entitled to recover possession thereof, without restoring to defendants any amount which they may have paid the pledgee of the note in order that they might fraudulently gain possession of same.

**Replevin—Negotiable Paper.—Evidence That Defendants** were mutually engaged in the accomplishment of the common purpose of obtaining possession of a note, and did obtain possession of it by a deal made with plaintiff's husband, who they knew had parted with all title to the note, and while he was intoxicated, is sufficient to support a verdict in favor of plaintiff.

**Conspiracy.—Circumstantial Evidence Tending to Prove** a conspiracy is properly admissible, with the qualification that if a conspiracy is not shown such evidence may be stricken out on motion.

**Promissory Note—Holder in Due Course.—Receipts Indorsed** on a promissory note, and signed by the payee, do not make the

---

*For subsequent opinion in bank, see 128 Cal. 313, 60 Pac. 933.

holder of the note the indorsee thereof, within the meaning of Civil Code, section 3124, providing that the indorsee of a negotiable instrument, in due course, acquires an absolute title thereto.

**Promissory Note—Holder in Due Course.**—An Instruction That if the jury believe that there was known, at the time of the transfer of a note, facts sufficient to arouse the suspicions of an ordinarily prudent person, then the purchaser of the note cannot defeat the title of the true owner, is immaterial, where it appears, without conflict, that the parties so purchasing the note are not indorsees of the note, and therefore received no better title than the assignor had.

APPEAL from Superior Court, Santa Barbara County.

Action to recover possession of a promissory note by Louise J. More against H. F. Finger, E. F. Rogers, Thomas R. More and Otto Kaeding. From a judgment for plaintiff, defendants Finger and Rogers appeal. Affirmed.

C. A. Storke for appellants; Boyce & Taggart and Richards & Carrier for respondent.

GRAY, C.—This is an action of claim and delivery. The plaintiff had judgment, and defendants Finger and Rogers appeal from the same, and also from an order denying them a new trial. The amended complaint sets out the following facts: Plaintiff is the wife of Wallace H. More. On the 17th of April, 1894, Thomas R. More executed to his brother, Wallace H. More, his promissory note for $3,500, due two years after date, and thereafter paid $500 on said note. That thereafter said Wallace borrowed from defendant Kaeding $25, giving his note therefor, and delivered to Kaeding the Thomas R. More note as collateral security for said $25. That thereafter, on December 3, 1894, the plaintiff and her husband borrowed $15 from Kaeding, gave their notes for it, and agreed that the said Thomas R. More note should be held as collateral security therefor. That thereafter, on December 12, 1894, Wallace H. More gave and assigned, by an instrument in writing, the said Thomas R. More note to the plaintiff, and that plaintiff since "has been, and now is, the true and lawful owner of said promissory note, as her sole and separate property." That after notice to the defendants, and with full knowledge on their part of the said assignment to plaintiff by her husband, the defendants conspired and confederated to cheat and defraud the plaintiff out of said note;

and, in pursuance of such conspiracy, the brother of Wallace, Thomas R. More, by certain tricks, separated her husband from plaintiff, and plied him with liquor until he was so drunk that he did not know what he was about, and while he was in that condition procured a transfer and assignment of the note in controversy from him to one of their number in exchange for about $290 in money, a duebill for $100, and a pretended conveyance of a piece of property of little or no value, each and all of the defendants then and there well knowing that the said note .was the sole and separate property of plaintiff. The value of the note is then alleged, and plaintiff prays judgment for the return of the same to her, or the value thereof, in case a return cannot be had.

The facts set forth in this amended complaint show that the plaintiff has a good cause of action against the defendants in claim and delivery, and it is not open to the objection that two causes of action have been improperly joined therein. Nor is it amenable to any of the special objections set forth in the demurrer to it interposed by the appellants and referred to in their brief. That the amended complaint does not allege a payment or an offer to pay the amounts for which the note was pledged to the defendant Kaeding is not an objection thereto available to the appellants. Kaeding has not appealed, nor did he demur to the amended complaint.

The appellants having wrongfully acquired possession of plaintiff's property by a deal with one who they knew had parted with his title thereto, as against them plaintiff was entitled to the possession thereof without restoring to them the amount which they had voluntarily paid to the pledgee of the note, that they might, for the purpose of defrauding plaintiff, gain possession of the same. After he had transferred and surrendered the note, Kaeding had no further right to or in it.

Appellants stoutly contend that the evidence is insufficient to justify the verdict. To this we cannot consent. The main question in dispute in the case related to whether the appellants and defendants had knowledge of the transfer of the note from Wallace More to the plaintiff at the time they were making their deal with Wallace in reference thereto. The plaintiff testified that she had personally told the defendants Kaeding and More, prior to the surrender thereof to said defendant More, that she was the owner of the note; that her

husband had assigned it to her; and though in this she was flatly contradicted by both those defendants, in support of the verdict and the order denying a new trial we must treat her testimony as true and decisive of that question of fact. It appears, further, that all the defendants were engaged in an effort to trade Wallace More out of the note in controversy, and that they were each and all interested and actively engaged in the accomplishment of this common purpose is plainly apparent from the evidence. That they were meeting with some difficulty at the hands of the plaintiff in accomplishing this purpose is also plainly apparent. Rogers, who was confessedly the agent for Finger in the transaction, besides being interested in it on his own account, had been told by the plaintiff that she did not want any real estate for the note, and she had plainly indicated to him that the trade which was finally accomplished with Wallace could not be made with her consent. In view of this direct evidence of notice, to some of the parties interested in the trade, of plaintiff's ownership of the note, and in view of the means and methods that were resorted to to secure the relinquishment of the note without the knowledge and consent of the plaintiff, and all the other circumstances surrounding the transaction, we cannot say that the jury, as well as the learned judge before whom the case was tried, were not warranted in reaching the conclusion that these appellants had knowledge of the previous transfer of the note to plaintiff, but proceeded with their trade with her husband upon the theory that their knowledge could not be made to appear, and they would occupy the position of bona fide purchasers of the note. The appellants, in their answer, admit that Wallace H. More did "transfer, sell and deliver and assign to them" the note in controversy. If they accepted this assignment and delivery with knowledge of the previous assignment to plaintiff, then they could not shield themselves behind the law-merchant, but the trade was a nullity for that reason, and they acquired no right whatever to the possession of the note as against the plaintiff, who was the true owner. The jury in their general verdict impliedly found that appellants took the note with knowledge of plaintiff's rights thereto and were not bona fide purchasers thereof, and, as we have already seen, there was evidence to support such a finding. This view of the case

disposes of all the points in appellants' brief as to insufficiency of evidence.

It is objected that the court erred in permitting plaintiff to testify as to the acts and declarations of Thomas R. More, as against appellants, before proof of a conspiracy between these defendants and said Thomas R. More was had. The court, in overruling the objection to this evidence at the trial, said: "Of course, if there is no conspiracy shown, these remarks cannot be taken as against your client"—meaning, evidently, the remarks of Thomas More sought to be put in evidence. The court doubtless had in mind that the plaintiff proposed to establish the conspiracy by circumstantial evidence—that is by showing that the defendants had pursued by their acts the same object, each with the same evident purpose in view—and this statement of the court was a clear intimation that, if no conspiracy was made to appear, the testimony objected to was not to be considered by the jury as evidence. It was perfectly proper to admit the offered evidence with such qualifications, and then, on failure to establish the conspiracy, it could have been stricken out on motion. It has been held that a conspiracy can be established by showing the conduct of the several parties to it evidencing a common purpose: People v. Bentley, 75 Cal. 407, 17 Pac. 436. But it is manifest that this could not be done if the trial court excluded the evidence of the conduct of each on the objection of the others that a conspiracy had not already been shown. The opinion which the court seems to have had at the conclusion of the evidence, that a conspiracy had been shown, was not without evidence to support it.

It is claimed that the court erred in instructing the jury that, "if the jury believe from a preponderance of the evidence that there was in the transaction sufficient to arouse the suspicions of an ordinary prudent person, then the purchaser of the note cannot defeat the title of the true owner." It is not necessary to determine whether this instruction properly states the rule applicable, where the contention is that a party stands in the position of a bona fide purchaser of a negotiable instrument, for the reason that it appears without conflict that the appellants were not the indorsees of the note in controversy, and consequently not in a position to claim the protection of the law-merchant. The note and the indorsements on it were placed in evidence, and they read as follows:

"3,500.00.                    Santa Barbara, April 17, 1894.

"For value received, two years after date I promise to pay to Wallace H. More or order the sum of thirty-five hundred dollars ($3,500) in gold coin of the United States of America, with interest thereon in like gold coin at the rate of six per cent. per annum from date until paid. Interest payable annually, and if not so paid to be added to the principal and draw a like rate of interest.

"THOMAS R. MORE."

Indorsed: "Received on the principal of the within note the sum of five hundred dollars. April 27, 1894. Wallace H. More."

"Received from Otto Kaeding twenty-five dollars. Wallace H. More."

"Received from Otto Kaeding fifteen dollars. Wallace H. More."

Receipts indorsed on a promissory note, and signed by the payee, do not make the holder of the note the indorsee thereof, within the meaning of section 3124 of the Civil Code: Central Trust Co. v. First Nat. Bank, 101 U. S. 68, 25 L. Ed. 876; McCrum v. Corby, 11 Kan. 464; Hadden v. Rodkey, 17 Kan. 429; Haydon v. Nicoletti, 18 Nev. 290, 3 Pac. 473; Moore v. Miller, 6 Or. 254, 25 Am. Rep. 518; Pickering v. Cording, 92 Ind. 306, 47 Am. Rep. 145. The appellants therefore received no better title than their assignor, Wallace More, had, and he, having previously assigned the note to his wife, had nothing left to assign. This view of the case not only makes the instruction complained of immaterial and devoid of any injury to appellants, but it also makes the instruction requested by them and refused by the court immaterial, and is at the same time a complete answer to every contention made by them on the theory that they occupy the position of indorsees of the note. The evidence, without conflict, shows that they are not such indorsees. The note was assigned and delivered to them according to the admissions of their answer, but it was never indorsed to them. For these reasons we advise that the judgment and order appealed from be affirmed.

We concur: Cooper, C.; Britt, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.